LONNIE RAY TAVARES, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 35909

September 17, 2001

30 P.3d 1128

*Michael R. Specchio,* Public Defender, and *Cheryl D. Bond,* Deputy Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Joseph R. Plater III,* Deputy District Attorney, Washoe County, for Respondent.

Before SHEARING, AGOSTI and ROSE, JJ.

## OPINION

*Per Curiam:*

### SUMMARY

In this case, we consider whether the failure to instruct the jury on the limited purposes for which uncharged bad act evidence is admitted constitutes plain error. Under the circumstances presented here, we conclude that it does. Moreover, we conclude that, subject to the defendant's objection, the prosecutor shall henceforth have the burden of requesting that a limiting instruction be given both at the time the prosecutor introduces the evidence and in the final charge to the jury. As a result, we will

review future cases involving the failure to request a limiting instruction for harmless error.

We also review whether the district court gave an erroneous flight instruction to the jury which stated that "a plan or desire to flee" could be considered as evidence of consciousness of guilt. Under the circumstances of this case, we conclude that the district court abused its discretion in giving the instruction.

On account of these errors, we reverse for a new trial.

### STATEMENT OF FACTS

Lonnie Ray Tavares was the father of C.T., a three-month-old infant whom he cared for with Amy Cuevas, Tavares's girlfriend and C.T.'s mother. Tavares was alone with C.T. on the night of January 31, 1998. At about 10:00 p.m. that night, Tavares called 911 to report that C.T. had stopped breathing. C.T. was brought breathless and pulseless to the hospital. Although C.T. was revived, she died a few days later. Doctors determined that she had suffered from multiple broken ribs and asphyxiation, which had caused the severe brain damage that eventually led to her death.

The State's theory was that Tavares, who had a history of mishandling C.T. and covering her nose and mouth to make her stop crying and hiccuping, was the one who had broken C.T.'s ribs and asphyxiated her. The State charged Tavares with first-degree murder under alternative theories of either willful, premeditated, and deliberate murder, or death resulting from child abuse. Because there was no direct physical evidence or eyewitness testimony, the State relied greatly on Tavares's prior bad acts and the inconsistencies and perceived callousness in statements he made after the incident.

To establish Tavares's prior bad acts, the State's first witness was his ex-girlfriend, April Striggles, with whom he had earlier fathered a child. Over Tavares's objection, Striggles testified to events six years earlier involving Tavares's alleged mishandling of their son. In particular, Striggles testified about an incident when she believed Tavares had bruised their son's ribs by squeezing him and about an incident when she found Tavares covering their son's mouth and nose with his hand, causing him to turn blue and stop breathing. The State also introduced Cuevas's testimony that both she and Tavares had on occasion similarly covered C.T.'s mouth and nose to cure her of the hiccups, but never so much as to stop C.T.'s breathing.

The district court admitted Striggles's testimony as being relevant to showing a lack of accident, Tavares's intent in committing the act, and Tavares's identity as the perpetrator. Through an oversight by counsel and the district court, the jury was never

instructed on the limited purposes for which the evidence was admitted.

The State also introduced Cuevas's testimony that after police began focusing their investigation on Tavares, he told her that he was "going to take a plane and get out of the country." Tavares, however, never made any preparations to leave the jurisdiction.

Over Tavares's objection, the district court gave the jury a modified flight instruction, which informed the jury that "a plan or desire to flee immediately after the commission of a crime" is a fact that it could consider in deciding Tavares's guilt because it tended to show a consciousness of guilt.

Tavares's defense was that on the night C.T. was injured, he had brought her to bed with him and accidentally rolled over onto her, thus smothering her and causing her to stop breathing. Tavares also suggested that C.T.'s rib injuries were caused by an earlier incident when Cuevas squeezed her as hard as she could.

The jury ultimately convicted Tavares of first-degree murder, and he was sentenced to life with parole after twenty years. Tavares now appeals claiming, among other things, that the district court erred by: (1) failing to give a limiting instruction regarding the limited use of prior bad act testimony; and (2) giving an improper flight instruction.

## DISCUSSION

### The failure to give a limiting instruction

Tavares contends that the district court's failure to give a limiting instruction regarding the use of the prior bad act testimony was reversible error. Tavares, however, failed to request the instruction, an omission which generally precludes appellate review.[1] Despite such failure, this court has the discretion to address an error if it was plain and affected the defendant's substantial rights.[2] Normally, a defendant must show that an error was prejudicial in order to establish that it affected his substantial rights.[3]

---

[1]See Etcheverry v. State, 107 Nev. 782, 784-85, 821 P.2d 350, 351 (1991) (holding that failure to object to jury instruction at trial bars appellate review); see also McKenna v. State, 114 Nev. 1044, 1052, 968 P.2d 739, 745 (1998) ("Failure to object to or request a jury instruction precludes appellate review, unless the error is patently prejudicial and requires the court to act sua sponte to protect the defendant's right to a fair trial.").

[2]See NRS 178.602 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

[3]See United States v. Olano, 507 U.S. 725, 734-35 (1993) (discussing Fed. R. Crim. P. 52(b), which is identical to NRS 178.602); see also Libby v.

Before today, we have only briefly addressed the importance of limiting instructions and the impact of their absence in criminal trials. In *Meek v. State,*[4] we noted that "in some cases" a district court has a duty to give limiting instructions *sua sponte.*[5] There, we held without further explanation that it was plain error for the district court to not give a limiting instruction regarding testimony that recited one of the defendant's prior bad acts. Because *Meek* did not fully address the standard by which limiting instructions should be given, we now take this opportunity to do so.

We have often held that the use of uncharged bad act evidence to convict a defendant is heavily disfavored in our criminal justice system because bad acts are often irrelevant and prejudicial and force the accused to defend against vague and unsubstantiated charges.[6] The principal concern with admitting such acts is that the jury will be unduly influenced by the evidence, and thus convict the accused because it believes the accused is a bad person.[7]

It is also well established that evidence of uncharged bad acts may be admitted for limited purposes other than showing a defendant's bad character so long as certain procedural requirements are satisfied and certain substantive criteria met.[8] NRS 48.045(2) lists several of the purposes for which uncharged bad act evidence is admissible, including "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*State,* 109 Nev. 905, 911, 859 P.2d 1050, 1054 (1993) (holding that plain error either: (1) had a prejudicial impact on the verdict when viewed in context of the trial as a whole; or (2) seriously affects the integrity or public reputation of the judicial proceedings), *overruled on other grounds by Libby v. Nevada,* 516 U.S. 1037 (1996).

[4]112 Nev. 1288, 1295, 930 P.2d 1104, 1108-09 (1996).

[5]Typically, the district court only has a duty to give a limiting instruction "upon request" of the parties. NRS 47.110 ("When evidence which is admissible as to one party or for one purpose but inadmissible as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."). But *Meek* implicitly recognized that the introduction of uncharged bad acts sometimes poses such a significant danger of unfair prejudice that the district court should give a limiting instruction *sua sponte.*

[6]*Walker v. State,* 116 Nev. 442, 445, 997 P.2d 805, 806 (2000) (citing *Berner v. State,* 104 Nev. 695, 696-97, 765 P.2d 1144, 1145-46 (1988)).

[7]*Id.*

[8]*See Petrocelli v. State,* 101 Nev. 46, 51-52, 692 P.2d 503, 507-08 (1985) (holding that a trial court deciding whether to admit such acts must conduct a hearing on the matter outside the presence of the jury); *Armstrong v. State,* 110 Nev. 1322, 1323-24, 885 P.2d 600, 601 (1994) (requiring that the trial court finding be made on the record so as to facilitate appellate review of trial court's decision); *Tinch v. State,* 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997) (outlining the substantive criteria for admitting prior bad act evidence).

We emphasize, however, that NRS 48.045(2) is merely an exception to the general presumption that uncharged bad acts are inadmissible.

In order to overcome the presumption of inadmissibility, the prosecutor has the burden of requesting admission of the evidence and establishing at a hearing outside the jury's presence that: "(1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."[9]

A prosecutor seeking admission of this volatile evidence must do so in the pursuit of justice and as a servant of the law, "the twofold aim of which is that guilt shall not escape or innocence suffer."[10] Thus, "[i]t is as much [a prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."[11]

Because the prosecutor is the one who must seek admission of uncharged bad act evidence and because the prosecutor must do so in his capacity as a servant to the law, we conclude that the prosecutor shall henceforth have the duty to request that the jury be instructed on the limited use of prior bad act evidence. Moreover, when the prosecutor fails to request the instruction, the district court should raise the issue *sua sponte*. We recognize that in unusual circumstances, the defense may not wish a limiting instruction to be given for strategic reasons.[12] In those circumstances, the desire of the defendant should be recognized as he is the intended beneficiary of the instruction and is in the best position to evaluate its consequence.

Because the defendant no longer has the burden of requesting a limiting instruction on the use of uncharged bad act evidence, we will no longer review cases involving the absence of the limiting instruction for plain error. Instead, we will review future cases for

---

[9]*Tinch,* 113 Nev. at 1176, 946 P.2d at 1064-65.

[10]*Berger v. United States,* 295 U.S. 78, 88 (1935).

[11]*Id.*

[12]*See, e.g., United States v. Mende,* 43 F.3d 1298, 1302 (9th Cir. 1995) (recognizing defendant's argument that inclusion of a limiting instruction may only aggravate the prejudicial effect of prior bad acts).

error under NRS 178.598, which provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Further, because the failure to give a limiting instruction on the use of uncharged bad act evidence is a nonconstitutional error,[13] we will not apply the stricter *Chapman v. California*[14] standard we use to evaluate the harmlessness of constitutional error. Instead, we will use the *Kotteakos v. United States*[15] standard utilized by federal courts reviewing nonconstitutional error under the federal harmless-error statute, which is identical to NRS 178.598.[16] The test under *Kotteakos* is whether the error "had substantial and injurious effect or influence in determining the jury's verdict."[17] Thus, unless we are convinced that the accused suffered no prejudice as determined by the *Kotteakos* test, the conviction must be reversed.[18] On account of the potentially highly prejudicial nature of uncharged bad act evidence, however, it is likely that cases involving the absence of a

---

[13]*See People v. Mitchell,* 586 N.W.2d 119, 122 (Mich. Ct. App. 1998) (reviewing the trial court's failure to provide an instruction limiting the purposes for which prior bad act evidence was introduced as nonconstitutional error); *Herrera v. Lacy,* No. CV-94-0125, 1995 WL 669675, at *8 (E.D.N.Y. Nov. 5, 1995) (holding that the failure to provide a limiting instruction with respect to prior bad act evidence was not constitutional error); *see also Brown v. State,* 953 P.2d 1170, 1177 (Wyo. 1998) (noting that the improper admission of similar act evidence is nonconstitutional error).

[14]386 U.S. 18 (1967). Under the *Chapman* standard, we ask whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder v. United States,* 527 U.S. 1, 18 (1999) (discussing *Chapman* and the United States Supreme Court cases decided under *Chapman*).

[15]328 U.S. 750 (1946).

[16]*See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

[17]328 U.S. at 776; *see also Brecht v. Abrahamson,* 507 U.S. 619, 631-32 (1993) (noting the *Kotteakos* standard is used to review nonconstitutional error in federal criminal appeals). The *Kotteakos* Court further explained the test as follows:

> If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. at 764-65.

[18]*See United States v. Olano,* 507 U.S. 725, 741 (1993) (noting that under Federal Rule of Criminal Procedure 52(a), the Government has the burden of

limiting instruction on the use of uncharged bad act evidence will not constitute harmless error.

We are also convinced that a limiting instruction should be given both at the time evidence of the uncharged bad act is admitted and in the trial court's final charge to the jury. As one leading commentator has stated:

> [An instruction given at the time of admission] can be directed specifically at the evidence in question and can take effect before the jury has been accustomed to thinking of it in terms of the inadmissible purpose. Instructions given at the end of the case will be more abstract, may apply to a number of items of evidence, and are buried in a mass of other instructions.[19]

Therefore, to maximize the effectiveness of the instructions, we hold that the trial court should give the jury a specific instruction explaining the purposes for which the evidence is admitted immediately prior to its admission and should give a general instruction at the end of trial reminding the jurors that certain evidence may be used only for limited purposes.[20]

Turning to the facts of this case, we note that Tavares's conviction rested primarily on circumstantial evidence as there was no clear direct evidence showing Tavares's actions. Instead, the State relied greatly on Tavares's prior bad acts, inconsistencies in Tavares's story, and the perceived callousness in his statements made after the incident. We have little doubt that in the absence of an instruction on the limited use of the evidence, Striggles's testimony regarding Tavares's previous rough handling and occlusion of their baby had a prejudicial impact on Tavares's trial rights and impermissibly tainted the jury's verdict. Accordingly, we conclude that Tavares's substantial rights were affected by the failure to give a limiting instruction and that the conviction must be reversed for plain error.

---

showing the absence of prejudice). *But see O'Neal v. McAninch,* 513 U.S. 432, 436-37 (1995) (criticizing the conceptualization of harmless-error analysis as one involving burdens and instead concluding that it is the responsibility of the court to determine whether the error affected the judgment "without benefit of such aids as presumptions or allocated burdens of proof"); *Kotteakos,* 328 U.S. at 765 (warning "against attempting to generalize broadly, by presumption or otherwise").

[19]21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5066 (1977 & Supp. 2001).

[20]*See id.* (suggesting that giving a specific instruction at time of admission and a general final instruction is the "ideal" method).

*The modification of the flight instruction*

Tavares also argues that the district court abused its discretion by including a modified flight instruction in the jury instructions when there was, in fact, no actual flight or plan of flight.[21] The flight instruction given was modified slightly from the typical instruction[22] and stated:

> *A plan or desire to flee* immediately after the commission of a crime is not sufficient in itself to establish guilt, but is a fact which tends to show a consciousness of guilt, if proved, and may be considered by you in light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.

In the present matter, the only testimony regarding flight was the following exchange between Cuevas and the prosecutor:

> [State:]   At any time prior to [Mr. Tavares telling you that the detectives thought he was guilty] or after that did Mr. Tavares tell you he had plans to flee?
> [Cuevas:]   Yes.
>
> . . . .
>
> [State:]   And what was it that Mr. Tavares told you that he was planning to do?
> [Cuevas:]   He was going to take a plane and get out of the country.

Importantly, there was no other evidence that Tavares actually took steps to flee the jurisdiction.

We first conclude that evidence of a defendant's "desire to flee" offers no insight into his consciousness of guilt. Indeed, any person being investigated for the commission of a serious crime likely has the desire to leave the jurisdiction. Accordingly, insofar as the modified instruction allows the jury to consider the desire to flee as evidence of guilt, it is in error.

A defendant's "plan to flee," however, is conceivably relevant so long as the evidence shows the existence of an actual plan and that this plan is undertaken with a consciousness of guilt.

---

[21]*See Castillo v. State,* 114 Nev. 271, 282, 956 P.2d 103, 110 (1998) (holding that this court reviews a district court's decision to give or refuse to give a nonstatutory jury instruction for an abuse of discretion).

[22]The typical instruction, in contrast, begins: "The flight of a person immediately after the commission of a crime . . . ."

Specifically, where an accused plans to flee the jurisdiction after committing a crime and takes overt steps toward completing this goal without actually fleeing, an instruction regarding the defendant's actions might be appropriate.

In this case, Cuevas's testimony of Tavares's unrealized mental plan does not evidence the existence of an actual plan and is merely evidence of Tavares's desire to flee. Accordingly, we conclude that the district court erred in including the modified flight instruction allowing the jury to consider Tavares's statements.[23]

## CONCLUSION

We conclude that Tavares's substantial rights were prejudiced by the absence of a limiting instruction regarding the limited purpose for which evidence of Tavares's prior bad acts was admitted. Moreover, we conclude that the prosecutor henceforth has the burden of requesting that a limiting instruction be given both at the time of the evidence's introduction and in the final charge to the jury, subject to the defendant's objection. Although this error is plain and would alone require reversal of Tavares's conviction, we conclude that the district court also erred in giving a modified flight instruction.[24]

Accordingly, we reverse and remand Tavares's conviction for a new trial.

---

[23]*See also United States v. Barnhart,* 889 F.2d 1374, 1378-79 (5th Cir. 1989) (concluding that it was error to give a flight instruction where the only evidence of flight was the defendant's statements that "Bogota looked real good this time of year" and that he had tried to get "invisible" and to "run").

[24]Tavares also argues that the district court abused its discretion by allowing Striggles to testify at all about Tavares's prior bad acts and that the jury was given a reasonable doubt instruction that impermissibly reduced the State's burden of proof. We have carefully reviewed these contentions and conclude that they lack merit.