Rose, J.,
concurring in part and dissenting in part:
I concur in the reversal of the extortion convictions for the reason stated, but I would also reverse the aggravated stalking charges and dissuading a witness from testifying because I do not believe the prior bad act evidence that was improperly admitted was harmless beyond a reasonable doubt.
The State’s first five witnesses testified about two prior incidents that resulted in convictions against Mr. Phillips. The first was a 1982 incident where Phillips approached a bank teller, shoved a bag at her, and told her to fill it up. Phillips had his hand in his coat, implying that he had a gun. She asked loudly if this was a robbery and Phillips left. He was arrested jogging away from the bank and apparently intoxicated. A gun was never found. The second conviction was for the possession of a concealed weapon in 1991. Phillips approached a patron at a bar in San Francisco and demanded that he buy him a beer. Phillips then reached into his pocket, pulled out a bullet, and placed it in front of the patron, stating it had the stranger’s name on it. Phillips pulled his coat back and revealed a pistol in a shoulder holster. Phillips then scooped up the change from the bar, told the man that if he said anything, he’d blow his head off, and ran. Phillips was arrested and found in possession of a loaded revolver. The man at the bar testified that Phillips was “threatening, intimidating, and scary.”
After the testimony about these two incidents, the jury could not help but have a vivid picture of Phillips as a crazed, threatening, dangerous man who carries deadly weapons. This is exactly the picture the prosecutor wanted the jury to have before she began presenting witnesses about the charges against Phillips.
*604 Early in her final argument, the prosecutor reminded the jury about these two prior incidents.
He’s threatened the bank teller before for money. When he realizes she says something to the police, he turns and he walks out of there because he knows the police are coming. . . .
He has a prior conviction for walking in and showing a .357 Magnum and saying I’m going to blow your head off to which he went to prison. This defendant knows what it means to say I’m going to kill him.
The prosecutor then called Phillips a slick scam artist and a manipulative con man and stated: “same game, different victim.” The prosecution certainly did not think the evidence of these two prior bad acts was inconsequential. Further, the argument “same game, different victim” improperly treats the bad acts as character evidence, not for the stated other purpose under NRS 48.045(2).
In Tavares v. State, we explained:
We have often held that the use of uncharged bad act evidence to convict a defendant is heavily disfavored in our criminal justice system because bad acts are often irrelevant and prejudicial and force the accused to defend against vague and unsubstantiated charges. The principal concern with admitting such acts is that the jury will be unduly influenced by the evidence, and thus convict the accused because it believes the accused is a bad person.[1]
When we make a rule of law, we have the corresponding obligation to enforce it. Because I believe this prior bad act evidence had a substantial impact on the jury, I cannot conclude that its presentation to the jury was harmless beyond a reasonable doubt.[2] Therefore, I would reverse and remand all convictions for a new trial.

 117 Nev. 725, 730, 30 P.3d 1128, 1131 (2001) (footnote omitted).

 Hymon v. State, 121 Nev. 200, 210, 111 P.3d 1092, 1099 (2005).