140 Nev., Advance Opinion 2

IN THE SUPREME COURT OF THE STATE OF NEVADA

BRYCE EDWARD DICKEY,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 85331

FILED

JAN 04 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon and sexual assault with the use of a deadly weapon. Fourth Judicial District Court, Elko County; Mason E. Simons, Judge.

*Affirmed.*

Matthew Pennell, Public Defender, Elko County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; and Tyler J. Ingram, District Attorney, Elko County,
for Respondent.

_____

BEFORE THE SUPREME COURT, CADISH, C.J., and PICKERING and BELL, JJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

24·00308

## OPINION

By the Court, BELL, J.:

Tragically, sixteen-year-old Gabrielle (Britney) Ujlaky lost her life in March 2020, the victim of homicide. A jury convicted appellant Bryce Edward Dickey of sexually assaulting and murdering Britney. Dickey now asserts his criminal convictions should be reversed, in part because the court permitted Dickey's ex-girlfriend to testify at trial that Dickey choked her during otherwise consensual sex. Dickey also raises concerns regarding testimony of expert witnesses.

Although we conclude the district court erred in admitting other act evidence for identification purposes, in admitting highly prejudicial evidence regarding the timing of one of the other acts, and in failing to narrowly tailor its subsequent limiting instruction regarding the testimony, we conclude that these errors are harmless. We take this opportunity, however, to clarify that the balancing test for propensity evidence of other sexual offenses admissible under NRS 48.045(3) does not apply to the admission of other act evidence concerning identity or intent under NRS 48.045(2). Likewise, the failure of the district court to make a proper finding regarding an expert witness also constituted harmless error. We conclude that the district court did not abuse its discretion by admitting expert testimony about rigor mortis or by denying a motion for a mistrial. Additionally, sufficient evidence supported the sexual assault conviction. Accordingly, we affirm Dickey's convictions.

### FACTS AND PROCEDURAL HISTORY

On March 8, 2020, Britney Ujlaky's family reported her missing. According to the family, Bryce Dickey gave Britney a ride, but she never arrived home. Dickey initially claimed he dropped Britney off at

 

Spring Creek High School and witnessed Britney leave with a man in a green truck.

Three days after she disappeared, volunteers discovered Britney's body in a remote area outside Elko. Britney was partially clothed, and her body had been wrapped in a blue tarp. Autopsy results revealed Britney died from a stab wound to her neck and strangulation, possibly with a cord of some kind.

Officers collected evidence from the scene, including a used condom in a nearby bush that matched a box of condoms from Dickey's truck. The found condom contained DNA evidence: Dickey's DNA on the inside and Britney's on the outside. Dickey's DNA was also found on swabs taken from Britney's neck and fingernails, as well as on chewing tobacco found near Britney's body.

Dickey initially denied having any sexual encounter with Britney. Dickey's story later shifted. Dickey told police that he and Britney engaged in consensual oral sex while Dickey was wearing a condom. During that interview, Dickey claimed after the sexual encounter he dropped Britney off near a trailer park with a man named Chaz Randall.

The State charged Dickey with open murder, including first-degree murder with the use of a deadly weapon, and sexual assault with the use of a deadly weapon. Dickey entered a not guilty plea, and the case proceeded to trial.

Prior to trial, the State filed a notice of intent to call expert witnesses forensic pathologist Dr. Julie Schrader and intelligence analyst Mike Soto. The notice provided, "Dr. Schrader is expected to testify and offer opinions in the area of forensic pathology and will testify regarding the autopsy of [the victim], her cause(s) of death, and all observations and

SUPREME COURT
OF
NEVADA

(O) 1947A

conclusions underlying those opinions." The State attached Dr. Schrader's forensic report to the notice. The State's notice also indicated that Soto would "testify and offer his opinion about [Dickey's] and Britney's geolocation data derived from Snapchat," attaching a report from the Rocky Mountain Information Network overlaying data from the social media company Snapchat onto a map. That data consisted of latitudes, longitudes, and timestamps from Britney's and Dickey's Snapchat accounts.

At trial, the State presented testimony from Dr. Schrader regarding Britney's autopsy, the cause of Britney's death, and rigor mortis. The State also called Soto to testify regarding the geolocation data from Snapchat, placing Dickey and Britney at the location where Britney's body was eventually discovered. Additional evidence presented at trial included surveillance footage from an apartment complex that showed Dickey's truck drove past Britney's high school without stopping on the day Britney was reported missing and testimony from Dickey's ex-girlfriend about four instances when Dickey choked the ex-girlfriend without consent while the couple engaged in otherwise consensual sex. Dickey choked the ex-girlfriend on multiple occasions after she expressly told him not to. The last, and most violent, of these incidents occurred on the night of a candlelight vigil in Britney's honor.

Before her testimony, the ex-girlfriend entered the courtroom in violation of the exclusionary rule and watched a small portion of Detective Nicholas Stake's testimony. As a result, Dickey requested the court preclude the ex-girlfriend's testimony or declare a mistrial. Outside the presence of the jury, the ex-girlfriend testified she was unaware witnesses were excluded from entering the courtroom. The ex-girlfriend heard about five minutes of Detective Stake's testimony regarding weather

conditions when Britney's body was discovered. The courtroom bailiff also testified, corroborating the ex-girlfriend's testimony. The district court admonished the State to make witnesses aware of the exclusionary rule but ultimately denied Dickey's motion for a mistrial and allowed the ex-girlfriend to testify.

At the close of trial, the jury found Dickey guilty of first-degree murder with the use of a deadly weapon and sexual assault with the use of a deadly weapon. Dickey was sentenced to life with the possibility of parole after a minimum of 46 years. Dickey now appeals.

## DISCUSSION

Dickey appeals on numerous grounds, including that the district court (1) erred in admitting evidence of other acts between Dickey and the ex-girlfriend, (2) gave incorrect jury instructions with respect to the admitted other acts testimony, (3) erred in denying Dickey's motion for a mistrial when the ex-girlfriend violated the exclusionary rule, and (4) admitted deficient expert testimony. Dickey also claims (5) insufficient evidence exists to support his conviction for sexual assault and (6) cumulative error warrants reversal. We disagree that any error present is reversible and affirm the district court's judgment of conviction.

*The district court erred in analyzing other act evidence*

Dickey contends the district court abused its discretion by admitting the ex-girlfriend's testimony that Dickey choked her without consent during otherwise consensual sex. Dickey asserts the ex-girlfriend's testimony constituted impermissible character evidence under NRS 48.045(1). Alternatively, Dickey asks this court to find the district court erred in finding the ex-girlfriend's testimony was not substantially more prejudicial than probative. This court reviews the admission of evidence for

SUPREME COURT
OF
NEVADA

(O) 1947A

5

an abuse of discretion. *See Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008).

The district court granted the State's motion to admit the ex-girlfriend's testimony under NRS 48.045(2), which allows other acts to be admitted for certain nonpropensity purposes. Other act evidence carries a presumption of inadmissibility. *Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 677 (2006). Before the admission of other act evidence, a court must hold an evidentiary hearing outside the presence of the jury. Based on the evidence presented, the court may find the presumption rebutted and admit other act evidence if the act is (1) relevant, (2) proven by clear and convincing evidence, and (3) not substantially more prejudicial than probative. *Petrocelli v. State*, 101 Nev. 46, 51, 692 P.2d 503, 507 (1985); *see also Ledbetter*, 122 Nev. at 259, 129 P.3d at 677 (applying the same analysis as in *Petrocelli*, citing to *Tinch v. State*, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997)). If the *Petrocelli* requirements are met, the evidence may be admitted for limited nonpropensity purposes as found by the court. Here, after an evidentiary hearing, the district court determined the ex-girlfriend's testimony was properly offered to prove Dickey's identity and intent.

We cannot say the district court properly applied *Petrocelli*. The district court erred in admitting the evidence to prove identity, in applying the *Franks* test to determine whether the evidence was more prejudicial than probative, and in allowing the admission of prejudicial evidence of low probative value. *See Franks v. State*, 135 Nev. 1, 6, 432 P.3d 752, 756 (2019). Nevertheless, because we conclude the ex-girlfriend's testimony was admissible under a *Petrocelli* analysis to prove intent, we

SUPREME COURT
OF
NEVADA

(O) 1947A

6

affirm the district court's decision to admit the evidence and deem the errors harmless given the overwhelming evidence of guilt.

*Under* Petrocelli, *the ex-girlfriend's testimony was properly admitted to prove Dickey's intent but not to prove his identity*

NRS 48.045(2) allows litigants to present evidence of other acts when offered for certain limited nonpropensity purposes including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The State moved to admit the ex-girlfriend's testimony for the limited purposes of proving identity and intent. Notably, the State did not request to admit the evidence for propensity under NRS 48.045(3).

*Identity*

First, we address whether the ex-girlfriend's testimony could be properly admitted to prove identity under NRS 48.045(2). For identity purposes, other acts have probative value "only to the extent that [d]istinctive "common marks" give logical force to the inference of identity. If the inference is weak, the probative value is likewise weak, and the court's discretion should be exercised in favor of exclusion." *Mayes v. State*, 95 Nev. 140, 142, 591 P.2d 250, 252 (1979) (quoting *People v. Banks*, 465 P.2d 263, 271 (Cal. 1970)).

Here, the sole act of choking during sex does not qualify as a distinctive common mark creating a logical inference that a separate instance of choking was done by the same person. Discrepancies between Dickey's conduct towards the ex-girlfriend and the strangulation of Britney further undercut any inference regarding identity: Britney's autopsy suggested she was strangled with a ligature; the ex-girlfriend testified Dickey choked her with his hand. Because the ex-girlfriend's testimony is

not reasonably probative of the identity of Britney's attacker, her testimony was not properly admitted for that purpose.

*Intent*

We now consider whether the evidence was properly admitted to prove intent. At trial, Dickey's sole defense to the sexual assault charge was consent. Consequently, Dickey placed the element of intent at issue. As we held in *Williams v. State*, "[t]he crucial question in determining if a sexual assault has occurred is whether the act [was] committed without the consent of the victim, and the intent of the accused is relevant to the issue of consent or [the] lack thereof." 95 Nev. 830, 833, 603 P.2d 694, 697 (1979) (internal citation omitted). A defendant's assertion of consent in a sexual assault case "place[s] in issue [intent as] a necessary element of the offense," which opens the door to the admission of other act evidence as rebuttal. *Id.*; *see also Mayer v. State*, 86 Nev. 466, 468, 470 P.2d 420, 421 (1970) (admitting evidence of defendant's possession of marijuana as probative to the issue of intent in a separate charge of selling narcotics because willfulness was a required element).

The ex-girlfriend's testimony is relevant and probative of intent as it presents evidence of Dickey's increasing violence around sex and intent to engage in the choking activity in the face of explicit nonconsent. Just as in the *Williams* case evidence of "sexual misconduct with other persons was admitted as being relevant to prove his intent to have intercourse with the victim without her consent," evidence of Dickey's willingness to choke a sexual partner without consent is relevant to prove his intent to strangle Britney without her consent as part of their sexual interaction. *Williams*, 95 Nev. at 833, 603 P.2d at 697; *see* NRS 48.015 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than

SUPREME COURT
OF
NEVADA

(O) 1947A

it would be without the evidence"). The question of admission to prove intent is a closer one than in *Williams*. Still, here as in *Williams*, the State offered the ex-girlfriend's testimony not for propensity purposes, but to demonstrate that choking a woman without consent during sex was an established element of Dickey's sexual proclivities and supported a finding that he intended to ignore Britney's lack of consent to choking during sex. Therefore, we cannot say the district court abused its discretion in admitting the ex-girlfriend's testimony as at least minimally probative of intent.

The ex-girlfriend's testimony sufficiently established the other act by clear and convincing evidence. *See Rose v. State*, 123 Nev. 194, 203, 163 P.3d 408, 414 (2007) (citing *LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992)) (the victim's testimony alone is sufficient to establish guilt of sexual assault beyond a reasonable doubt, so long as the testimony includes "*some* particularity regarding the incident"). The district court found the ex-girlfriend's testimony credible, and we do not disturb this determination. *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008) (this court "will not reweigh the evidence or evaluate the credibility of witnesses" on appeal).

Finally, we examine whether the ex-girlfriend's testimony was substantially more prejudicial than probative. *See Petrocelli*, 101 Nev. at 51, 692 P.2d at 507; *Tinch*, 113 Nev. at 1176, 946 P.2d at 1064-65. While *Petrocelli* itself does not contain explicit factors to consider regarding the probative value of evidence, this court outlined the following factors in *Randolph v. State*:

> When balancing probative value against the danger of unfair prejudice, courts consider a variety of factors, "including the strength of the evidence as

SUPREME COURT
OF
NEVADA

(O) 1947A

to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility."

136 Nev. 659, 665, 477 P.3d 342, 349 (2020) (quoting *State v. Castro*, 756 P.2d 1033, 1036 (Haw. 1988)) (analyzing admissibility under NRS 48.045(2)).

Following the *Randolph* factors here, first, the ex-girlfriend testified under oath regarding the instances of choking. Nothing in the record suggests that her testimony inaccurately described the prior acts. Second, Dickey's choking of the ex-girlfriend was arguably similar to the offense against Britney, as both involved elements of choking along with sexual contact. Yet, we acknowledge that the acts against the ex-girlfriend and Britney are not identical. Britney was likely strangled with an object, while the ex-girlfriend testified Dickey choked her with his hand.

Third, the ex-girlfriend testified that the four instances of choking occurred within the year preceding Dickey's arrest. As to the fourth and fifth factors, Britney's consent, or lack of consent, to sexual contact with Dickey is an essential question in this case. No other testimony, save Dickey's own, provided any direct evidence towards the issue of consent. The ex-girlfriend's testimony presented evidence of Dickey's past violence around sex, including intent to engage in the choking activity without consent.

When considering the sixth and final factor, we are compelled to make further distinctions regarding the ex-girlfriend's testimony. The first three instances of choking to which the ex-girlfriend testified would not, on their own, support a finding of undue prejudice. Accordingly, under

*Petrocelli*, the ex-girlfriend's testimony regarding the first three instances of choking was properly admitted on this issue of intent.

We must take note, though, of the particularly inflammatory testimony concerning the last instance of choking, which occurred on the night of a candlelight vigil held to honor Britney. Pointing out the timing of this particular incident was highly prejudicial. Also, given the admission of the other act testimony for intent, the timing of the event possesses virtually no probative value. As a result, the district court erred in allowing testimony regarding the specific timing of this incident. Nonetheless, the weight of independent, cumulative evidence against Dickey renders this error harmless. *See Tavares v. State*, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) (holding an error is harmless unless it has a "substantial and injurious effect or influence in determining the jury's verdict" (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))).

The district court also improperly applied the balancing test outlined in *Franks*, 135 Nev. at 6, 432 P.3d at 756, to make its prejudice findings. *Franks* interpreted NRS 48.045(3), which allows evidence of other sexual offenses to be admitted for propensity purposes in "a criminal prosecution for a sexual offense." At no point did the State seek admissibility under NRS 48.045(3), and the evidence was not admitted for propensity purposes. Thus, the district court improperly applied the *Franks* test.

Today, we make clear that *Franks* and *Petrocelli* are not interchangeable standards. Parties have an obligation to clearly identify the exception to the general principle of inadmissible character evidence under which they are seeking admission. While we recognize that, in practice, the inquiries the district courts must undertake are relatively

similar, the blended application of two distinct statutory schemes collapses the broader, nonpropensity analysis of *Petrocelli* and the limited-scope propensity analysis of *Franks*. This confusion complicates appellate review and risks the improper use of NRS 48.045(3) beyond the narrow scope intended by the Legislature.

The *Franks* test for determining prejudice when admitting a prior sexual offense for the purpose of propensity contains a slightly narrower and more stringent test than the one used to determine the prejudicial impact of other act evidence admitted in nonpropensity contexts. *See United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001) ("Because of the inherent strength of the evidence [of prior sexual offenses] . . . a court should pay careful attention to both the significant probative value and the strong prejudicial qualities of that evidence." (quoting *Doe v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000))); *see also Alfaro v. State*, 139 Nev., Adv. Op. 24, 534 P.3d 138, 150-51 (2023) (applying the *Franks* test). In this regard, any error would tend to help, rather than harm, Dickey. Thus, the error is harmless.

We likewise determine the district court's error in admitting the ex-girlfriend's testimony to prove identity was harmless given the quantity of evidence supporting the State's case against Dickey and its proper use to prove intent. *See Fiegehen v. State*, 121 Nev. 293, 296, 113 P.3d 305, 307 (2005) (finding harmless error where overwhelming evidence of guilt existed, including an identification and DNA evidence at the crime scene). The State's evidence at trial included DNA and geolocation data placing Dickey at the scene of the crime, inconsistent statements to police that could reasonably impact Dickey's credibility with the jury, and a used condom proving Dickey had sexual contact with Britney.

*The district court's errors in providing limiting jury instructions were harmless*

Dickey next contends that the district court erred by giving the jury an overly broad limiting instruction regarding the ex-girlfriend's testimony. The instruction failed to limit use of the other act evidence to establishing identity or intent—the only purposes for which the district court allowed the evidence. After admitting the ex-girlfriend's testimony for the limited purposes of identity and intent, the district court administered the following jury instruction:

> Evidence has been received tending to show that the defendant committed wrongs or acts other than that for which he is on trial.
>
> Such evidence was not received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit such crimes.
>
> Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or a common scheme or plan.
>
> . . . .

The district court offered this instruction once immediately prior to the ex-girlfriend's testimony and once at the close of trial.

When admitting evidence for limited purposes under NRS 48.045(2), limiting instructions must instruct the jury to consider only those purposes for which the evidence was actually admitted. Any instruction to consider purposes for which admission was not granted constitutes an error subject to NRS 178.598 harmless error review. *Allred v. State*, 120 Nev. 410, 415, 92 P.3d 1246, 1250 (2004); *see also Tavares*, 117 Nev. at 732, 30 P.3d at 1132.

The district court erred by including all potential purposes listed for admission of other act evidence under NRS 48.045(2), instead of limiting its instruction to only the purposes for which the court found the evidence admissible—identity and intent. Additionally, given the error in admitting the evidence for purposes of identity, a proper limiting instruction in this case should have informed the jury that it could consider the other act evidence for the purpose of intent only.

As a result, we must consider whether such an error is harmless. We consider whether the district court's instruction to consider the ex-girlfriend's testimony for the purposes of intent, motive, opportunity, preparation, plan, knowledge, absence of mistake or accident, and common scheme or plan had a substantial and injurious impact on the verdict. We conclude it did not.

Substantial, independent evidence exists to support Dickey's convictions. When considering the ex-girlfriend's testimony, we cannot say that instructing the jury on all potential purposes for the admission of other acts under NRS 48.045(2) altered the outcome of this case. Accordingly, we hold the error in the provided jury instructions harmless.

*The district court did not abuse its discretion in declining to declare a mistrial based on a violation of the exclusionary rule*

"The decision to grant a mistrial is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion." *Romo v. Keplinger*, 115 Nev. 94, 96, 978 P.2d 964, 966 (1999) (internal quotation marks omitted). Violations of the rule excluding witnesses from the courtroom can warrant a mistrial. *Id.* Here, the ex-girlfriend entered the courtroom during trial and heard testimony from other witnesses before she testified, which violated the exclusionary rule. *See* NRS 50.155(1) (providing that "at the request of a party the judge shall order witnesses

excluded so that they cannot hear the testimony of other witnesses"). On learning of this violation, the district court admonished the State and permitted examination of the ex-girlfriend outside the presence of the jury. This examination revealed minimal basis for harm, as the testimony the ex-girlfriend witnessed was irrelevant to her own. The district court took remedial measures to avoid prejudice from the ex-girlfriend's violation and found no bad faith existed on the part of the State. The violation could not have impacted the ex-girlfriend's unrelated testimony. Consequently, the district court did not abuse its discretion by denying Dickey's motion for a mistrial.

Any other alleged violations of the exclusionary rule were either not raised before the district court or not adequately briefed before this court, and so we decline to reach them. *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

*The district court properly admitted Dr. Schrader's expert testimony; it erred when it failed to conduct a* Hallmark *analysis on a proposed expert witness, but this error was harmless*

Dickey next argues the district court abused its discretion when it admitted (1) Dr. Schrader's testimony with respect to rigor mortis, as the State's NRS 174.234 notice procedures were insufficient, and (2) Soto's expert testimony about geolocation data placing Dickey with Britney at the time and place of her death when he was not qualified to offer expert testimony.

*Notice of Dr. Schrader's rigor mortis testimony*

Nevada law requires a party in a criminal case to notify the opposing party of their intent to call an expert witness 21 days before trial.

NRS 174.234(2) (held unconstitutional on other grounds in *Grey v. State*, 124 Nev. 110, 118, 178 P.3d 154, 160 (2008)). This notice must include "[a] brief statement regarding the subject matter on which the expert witness is expected to testify and the substance of the testimony." NRS 174.234(2)(a). The State served timely notice of its intent to use Dr. Schrader as an expert, including a copy of Dr. Schrader's autopsy report and a statement announcing the State's intent to examine Dr. Schrader regarding the contents of the attached report. Dickey did not object to Dr. Schrader's testimony during trial and therefore failed to preserve the alleged error for appeal. *Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018). Additionally, given that the attached autopsy report discussed rigor mortis, the State provided adequate notice to the defense regarding the potential for this testimony. The district court did not err in allowing Dr. Schrader's testimony when Dickey failed to object, and the State provided adequate, timely notice under NRS 174.234.

*Soto's opinion testimony about geolocation data*

Dickey also challenges the qualification of Soto as an expert witness. Dickey argues the district court erred in admitting Soto's testimony over Dickey's objection, implying that the district court was required to qualify Soto as an expert under *Hallmark v. Eldridge*. Dickey argued that Soto failed to employ a reliable methodology per NRS 50.275. *See Hallmark v. Eldridge*, 124 Nev. 492, 498, 189 P.3d 646, 650 (2008) (clarifying that to testify as an expert witness, the witness must (1) be qualified in an area of specialized knowledge, (2) use that knowledge to assist the trier of fact, and (3) limit their testimony to matters within the scope of that knowledge). The district court made no such findings, concluding only that Soto's testimony was a product of reliable methodology.

Supreme Court
of
Nevada

(O) 1947A

16

Here, our ability to review the district court's action is complicated by the district court's unclear response to Dickey's objection. By finding Soto's testimony was the product of reliable methodology, the district court seems to understand its ruling to allow Soto to offer expert testimony despite the State's assertion Soto need not be so qualified. *See id.* at 500, 189 P.3d at 651 (requiring district courts qualifying experts to consider factors including whether the testimony is a "product of reliable methodology"). To the extent the district court's action qualified an expert witness, we review that decision for abuse of discretion. *Id.* at 498, 189 P.3d at 650.

First, we make clear that when a party objects to the qualifications of a witness on the basis that the witness is not qualified to offer the proffered opinion under *Hallmark*, the district court is required to either conduct a full *Hallmark* analysis or to make clear expert qualification is not necessary. Because Dickey properly raised an objection based on Soto's qualifications to testify on the geolocation data, and because it appears the district court dispatched this objection through an incomplete *Hallmark* analysis, we conclude the district court erred in failing to conduct a complete *Hallmark* analysis regarding Soto's testimony.

Nevertheless, we conclude the error was harmless, because under our prior caselaw, Soto's testimony did not require specialized knowledge. *See* NRS 178.598 ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). Soto plotted geolocation data on a map and adjusted the data to the local time. In *Burnside v. State*, a detective was similarly permitted to testify to a map he created from cell phone location data without being qualified as an expert. 131 Nev. 371, 383, 352 P.3d 627, 636 (2015). This court held "the map and

the detective's testimony were not based on specialized knowledge." *Id.* Soto's testimony is indistinguishable from the testimony in *Burnside.* In both cases, the witness plotted data obtained from another source onto a map. Thus, the district court did not abuse its discretion because Soto's testimony was admissible as lay testimony, without requiring an expert-witness analysis.

*Sufficient evidence existed for a rational jury to convict Dickey of sexual assault*

Dickey asserts that insufficient evidence supports the sexual assault conviction. We "will not disturb a judgment of conviction in a criminal case on the basis of insufficiency of the evidence so long as the jury verdict is supported by substantial evidence." *Mitchell v. State*, 105 Nev. 735, 737, 782 P.2d 1340, 1342 (1989). "In determining the sufficiency of the evidence below, the critical question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mejia v. State*, 122 Nev. 487, 492, 134 P.3d 722, 725 (2006) (internal quotation marks omitted).

Dickey argues a rational jury could not have found forced penetration because the autopsy reported a lack of genital trauma. Sexual assault occurs when one person "[s]ubjects another person to sexual penetration . . . against the will of the victim." NRS 200.366(1)(a). The plain language of the statute neither requires force nor physical injury.

The State presented substantial circumstantial evidence sufficient to support the jury's guilty verdict of sexual assault. *See Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980) (allowing a jury to rely on circumstantial evidence to support a verdict). Dr. Schrader testified a sexual assault may occur with no physical findings whatsoever and lack of

injury does not equate with consent. Dickey admitted to having oral sex with Britney, despite first denying any sexual contact and claiming Britney was like a little sister. Geolocation data placed Dickey and Britney together at the location where Britney's body was later discovered, and a condom with both their DNA profiles was found at the scene. Finally, Britney's body was found in a state of undress. The jury could have reasonably relied on this evidence to conclude, as the State argued in its closing, that Britney was given a choice between death and performing oral sex on Dickey, after which Dickey killed her to prevent her from speaking out. *See Mitchell*, 105 Nev. at 737, 782 P.2d at 1342 (upholding a jury verdict of sexual assault when there was no evidence of physical trauma to the victim's genitalia, but the victim was found in a remote area and in a state of undress). Likewise, the jury here could have rejected Dickey's assertion of consensual sex given the circumstances of Britney's death and Dickey's changing versions of the events.

The facts presented at trial provided substantial evidence for a reasonable jury to find Dickey guilty of sexual assault under Nevada law. Accordingly, sufficient evidence existed to convict Dickey on this count.

*Cumulative error does not warrant reversal*

Lastly, Dickey claims the cumulative errors in his case warrant reversal. A defendant's right to a fair trial may be violated by the cumulative effect of errors even when any one error, individually, is harmless. *See Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002). When evaluating a claim of cumulative error, relevant factors include "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).

On this record we have found four instances of error that could have impacted Dickey's conviction: (1) the district court improperly admitted the ex-girlfriend's testimony for purposes of identity; (2) the district court improperly admitted the ex-girlfriend's testimony that Dickey choked her on the night of Britney's candlelight vigil; (3) the jury was given erroneous instructions to consider the ex-girlfriend's testimony, generally, for motive, opportunity, preparation, plan, knowledge, absence of mistake or accident, and common scheme or plan; and (4) the district court failed to engage in a full *Hallmark* analysis for Soto. We determined each of those errors harmless and there is nothing cumulative in the nature of those errors to warrant reversal. Here, despite the grave nature of the crime, evidence of guilt was overwhelming. Errors did not impugn the overall integrity of the trial and were not the by-product of any bad faith on the part of the State. We are not convinced the cumulative weight of these errors deprived Dickey of his constitutional right to a fair trial.

## CONCLUSION

Parties must make clear the specific bases for admission of other act evidence under *Petrocelli* and NRS 48.045(2). The court, after an evidentiary hearing, must determine whether any of those bases apply, being careful to analyze the foundation for each basis. Courts must take care not to mix the *Franks* and *Petrocelli* analyses, as the tests, instructions, and use of evidence differ for other act evidence and other sexual offense evidence. Any limiting instruction given regarding the admission of other act evidence must specify only the bases determined by the court.

A district court also must engage in a thorough *Hallmark* analysis, either in writing or on the record, when a party has challenged the qualifications of an expert. Prior caselaw of this court supports a determination that a witness plotting known coordinates on a map does not

SUPREME COURT
OF
NEVADA

(O) 1947A

require expert testimony. Despite a few harmless errors by the trial court in these regards, the State presented overwhelming evidence to support the jury's conviction of Dickey for murder and sexual assault. Accordingly, concluding no reversible error exists, we affirm the district court's judgment.

_____, J.
Bell

We concur:

_____, C.J.
Cadish

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A