140 Nev., Advance Opinion 47

IN THE SUPREME COURT OF THE STATE OF NEVADA

ISAAC ANTONIO RODRIGUEZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 86524

**FILED**

JUL 03 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of five counts of sexual assault of a child under the age of 14, lewdness with a child under the age of 14, and possession of visual presentation depicting sexual conduct of a person under 16 years of age. Second Judicial District Court, Washoe County; David A. Hardy, Judge.

*Affirmed.*

Evelyn A. Grosenick, Public Defender, and Erica P. Roth, Appellate Deputy Public Defender, Washoe County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Marilee Cate, Appellate Deputy District Attorney, Washoe County,
for Respondent.

BEFORE THE SUPREME COURT, HERNDON, LEE, and BELL, JJ.

24- 23077

*OPINION*

By the Court, HERNDON, J.:

Issac Antonio Rodriguez appeals a judgment of conviction for five counts of sexual assault of a child under the age of 14, lewdness with a child under the age of 14, and possession of visual presentation depicting sexual conduct with a child under the age of 16. His conviction stems from his sexual relationship with a minor, A.F., from 2017 to 2019. Rodriguez now appeals on three grounds. First, Rodriguez argues that the district court erred in admitting text messages (the State's exhibits 9 and 16) over his objection. Next, he argues that the State committed prosecutorial misconduct in its closing argument when it argued that the jury could draw inferences from the time gaps between text messages. Finally, Rodriguez argues the district court erred in denying his request for a jury instruction regarding the edited nature of the admitted text messages.

We conclude that the district court properly admitted the State's exhibits 9 and 16, and we clarify that the rule of completeness is a rule of admission, not of exclusion. Additionally, the prosecution did not commit misconduct in its closing argument. Finally, the district court did not err in failing to instruct the jury regarding the edited nature of the State's exhibits 9 and 16. Accordingly, we affirm.

*FACTS AND PROCEDURAL HISTORY*

Rodriguez briefly lived with A.F. and her family before his relationship with A.F. began. In November 2017, Rodriguez moved out of A.F.'s home and began communicating regularly with A.F. via social media and text messages. When they first began messaging, A.F. was 11 years old and Rodriguez was an adult. Over time, the relationship became romantic and sexual in nature. A.F. began sending nude photographs of her chest and buttocks to Rodriguez. The two also began sexting and role-playing

SUPREME COURT
OF
NEVADA

(O) 1947A

fantasy sexual scenarios. About eight months into the relationship, Rodriguez and A.F. started to meet in person. On December 31, 2018, the evening before A.F.'s thirteenth birthday, Rodriguez and A.F. engaged in sexual intercourse for the first time. Over the next five months, Rodriguez and A.F. met regularly to engage in sexual intercourse. The two met three or four times per week and engaged in sexual intercourse, according to A.F., "most of the time" they met. On at least one occasion, Rodriguez and A.F. met and did not engage in intercourse but still had sexual contact.

In April 2019, A.F.'s parents discovered the relationship and contacted the police. A.F. was interviewed by a child advocacy center, and law enforcement confiscated A.F.'s cell phone for the investigation. Later, the police brought Rodriguez in for a voluntary interview and advised him of his rights. During the interview, Rodriguez admitted to having sexual intercourse with A.F. approximately 17 times. Rodriguez also consented to a search of his cell phone and iPad. The police forensically examined A.F.'s cell phone and Rodriguez's cell phone and iPad. The forensic examination yielded thousands of text messages, some sexually explicit, as well as nude photographs of A.F. on one of Rodriguez's devices. The admitted evidence of the text conversations also indicated that there were time gaps between messages after the two discussed meeting in person.

The State charged Rodriguez with five counts of sexual assault against a child under the age of 14. It brought one count for each month that Rodriguez engaged in the sexual relationship with A.F. The State also charged Rodriguez with lewdness with a child under the age of 14 and possession of visual presentation depicting sexual conduct of a child. Rodriguez pleaded not guilty and proceeded to trial.

On the first day of trial, the district court identified concerns regarding the rule of completeness because only portions of the voluminous

number of text messages between A.F. and Rodriguez were submitted as evidence by the State. Prior to the State's case-in-chief, Rodriguez expressed to the court that while he had originally intended to seek introduction of some additional text messages through proposed defense exhibits 78 and 79 to complete the State's proposed exhibits 9 and 16, he had since decided that he would not seek to admit those additional messages. At the same time, Rodriguez objected to the State's possible introduction of its proposed exhibits 9 and 16 on the basis that they were "redacted to such an extent that they mischaracterize[d] evidence." The district court overruled the objection. During the State's case-in-chief, the State moved to admit exhibit 9, and Rodriguez objected again on the bases of authentication and "mischaracterization." Outside of the presence of the jury, the court held a hearing on the matter and overruled Rodriguez's objection. The district court admitted the State's exhibits 9 and 16. Rodriguez never moved to admit proposed defense exhibits 78 and 79 for any purpose.

During the State's closing argument, the State noted that in A.F. and Rodriguez's text conversations, they often texted back and forth about meeting in person, and there would then be gaps of time with no text messages. The State argued that these gaps in time with no text messages supported the inference that they had indeed met in person. Rodriguez objected to the argument; the district court overruled the objection. Rodriguez also sought a jury instruction explaining that the text messages in the State's exhibits 9 and 16 were only a sampling of the full conversations between A.F. and him, but the district court declined to instruct the jury on the matter.

At the close of trial, the jury returned a verdict of guilty on all counts. On counts 1-5, the five sexual assault charges, Rodriguez was

sentenced to concurrent sentences of life in prison with the possibility of parole after 35 years. For count 6, the lewdness charge, Rodriguez was sentenced to a concurrent term of life in prison with the possibility of parole after 10 years. For count 7, the possession charge, Rodriguez received a consecutive sentence of 30 months in prison with the possibility of parole after 12 months.

## DISCUSSION

*The district court did not err in admitting the State's exhibits 9 and 16, which contain text messages between Rodriguez and A.F.*

Rodriguez argues that the district court erred in admitting the State's exhibits 9 and 16 over his objection, asserting that the rule of completeness bars their admission. The State contends that Rodriguez failed to preserve this error because his objection was based on authentication and mischaracterization. We agree with the State, as Rodriguez did not frame his objection at trial as being based on the rule of completeness. Rodriguez's objection was based on the form of the State's exhibits, and more narrowly, the way the redactions appeared in the text message exchanges. Thus, Rodriguez did not object on the grounds that NRS 47.120(1), the rule of completeness, barred the admission of the State's exhibits. Because Rodriguez failed to object below on the same grounds urged here, we review his argument for plain error. *Pantano v. State*, 122 Nev. 782, 795, 138 P.3d 477, 485 (2006). "In conducting plain error review, we must examine whether there was error, whether the error was plain or clear, and whether the error affected the defendant's substantial rights." *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (internal quotation marks omitted). Also, Rodriguez has the burden of proof to demonstrate actual prejudice. *Id.*

Here, Rodriguez fails to demonstrate error. NRS 47.120(1) codifies the rule of completeness: "When any part of a writing or recorded statement is introduced by a party, the party may be required at that time to introduce any other part of it which is relevant to the part introduced, and any party may introduce any other relevant parts." Rodriguez argues that without defense exhibits 78 and 79, the State's exhibits 9 and 16 were inadmissible. But Rodriguez misunderstands the purpose of NRS 47.120(1). This rule is one of admission, not of exclusion. *See Collman v. State*, 116 Nev. 687, 707, 7 P.3d 426, 439 (2000) (explaining that under NRS 47.120(1), a party is permitted to introduce other relevant parts of a writing). It functions as a mechanism for an adverse party to *introduce* additional statements to complete portions of a written or recorded statement. Thus, a party's failure to move for admission of additional statements under NRS 47.120(1) will not render the initial statements *inadmissible*. Rodriguez never sought to introduce exhibits 78 and 79 to complete the State's exhibits.[1] Since the State's exhibits were otherwise admissible under the Nevada rules of evidence, the district court did not err in admitting them.

*The State did not commit prosecutorial misconduct in its closing argument*

Next, Rodriguez argues that the prosecution engaged in misconduct during its closing argument by arguing that every gap between text messages was proof that A.F. and Rodriguez were together and

---

[1]We note as well that even if Rodriguez had moved to admit defense exhibits 78 and 79 and the court had granted their admission, the additional statements would not have changed the outcome of the trial due to the overwhelming evidence of Rodriguez's guilt. *See Tavares v. State*, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) (holding that a nonconstitutional error is harmless unless it had a substantial and injurious effect on the jury's verdict); NRS 178.598.

Supreme Court
of
Nevada

(O) 1947A

6

engaging in sexual conduct. The State asserts that Rodriguez failed to preserve this error because his objection was untimely.

Untimely objections preclude appellate review. *Pasgrove v. State*, 98 Nev. 434, 435, 651 P.2d 100, 101 (1982). Here, Rodriguez made his objection after the State finished its closing argument, when the court invited counsel to address any issues before the defense closing argument began. Accordingly, we review the claim for plain error.

Even if we reviewed the merits of Rodriguez's claim under a more favorable standard, Rodriguez would not prevail. We engage in a two-step analysis when considering prosecutorial misconduct claims: we determine (1) whether the prosecutor's conduct was improper, and (2) if the conduct was improper, whether the conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). We have long held that the prosecution has "a right to comment upon the testimony and to ask the jury to draw inferences from the evidence, and has the right to state fully [its] views as to what the evidence shows." *State v. Green*, 81 Nev. 173, 176, 400 P.2d 766, 767 (1965). The prosecution may "argue inferences from the evidence and offer conclusions on contested issues." *Miller v. State*, 121 Nev. 92, 100, 110 P.3d 53, 59 (2005) (quoting *Jones v. State*, 113 Nev. 454, 467, 937 P.2d 55, 63 (1997)).

The prosecution's conduct was proper, so Rodriguez cannot demonstrate error. Rodriguez contends that the prosecution argued that every gap in text messages was proof that A.F. and Rodriguez were together and engaging in sexual conduct. This assertion is disproved by the record. The prosecution's closing argument walked through each month of A.F. and Rodriguez's sexual relationship, linking the events with each count of sexual assault. In doing so, the prosecution addressed the text messages that involved Rodriguez and A.F. discussing meeting up in person. The

SUPREME COURT
OF
NEVADA

(O) 1947A

7

State then identified gaps in time, with no text messaging, that occurred after these text exchanges. The State argued that, in conjunction with other evidence, the jury could infer from the gaps between messages after discussions of meeting up that A.F. and Rodriguez did in fact meet up in person. In examining the entire closing argument, the prosecution permissibly argued that the jury could use its common sense to draw a reasonable inference that the evidence presented—which included the gaps in text messages—demonstrated that A.F. and Rodriguez were together and engaging in sexual intercourse. Accordingly, we conclude that the prosecution did not engage in misconduct.

*The district court did not err in instructing the jury*

Rodriguez argues that the district court erred in denying his request for a jury instruction explaining that the text messages introduced in the State's exhibits 9 and 16 were only a sampling of the conversations between A.F. and Rodriguez. But the record is devoid of any jury instruction language that he may have proposed to the district court. There was no proposed written instruction provided in the record, and there is no transcript wherein proposed language for an instruction was offered or discussed. Moreover, Rodriguez fails to cite any relevant legal authority for the inclusion of his alleged proposed instruction. *See Jeremias v. State*, 134 Nev. 46, 59, 412 P.3d 43, 54 (providing that we may decline to consider arguments that are not supported by cogent argument or authority). Thus, we decline to consider the contention.[2]

---

[2]We note that A.F. testified that the messages in exhibits 9 and 16 were not all of the messages that the two exchanged. Rodriguez argued to the jury that the messages were "cherrypick[ed]." Thus, the jury clearly was made aware that the text messages introduced were but a sampling of all the messages Rodriguez and A.F. had exchanged.

## CONCLUSION

The rule of completeness does not prohibit the admission of otherwise admissible statements. Instead, NRS 47.120(1) provides the adverse party the opportunity to introduce additional material relevant to complete the already admitted statements. Thus, the district court did not err in admitting the State's exhibits 9 and 16. Regarding prosecutorial misconduct, the State is permitted to argue that the jury may draw reasonable inferences from the evidence. Here, the prosecution did not commit misconduct in its closing argument by arguing that gaps in text messages indicated A.F. and Rodriguez had met in person. Finally, Rodriguez fails to cogently argue that the district court erred in failing to provide the jury with an instruction that the text messages were a sampling of communications between A.F. and himself. Accordingly, we affirm the judgment of conviction.

_____, J.
Herndon

We concur:

_____, J.
Lee

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A

9