STATE of Wisconsin, Plaintiff-Respondent,

v.

Todd Michael JOHNSON, Defendant-Appellant.†

Court of Appeals

*No. 84-144-CR.  Submitted on briefs September 4, 1984.—
Decided October 24, 1984.*
(Also reported in 358 N.W.2d 824.)

† Petition to review denied.

For the defendant-appellant, the cause was submitted on the briefs of *Mary E. Waitrovich,* assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Douglas Haag,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.  Todd Michael Johnson appeals from a judgment of conviction entered against him following a jury trial. Johnson was found guilty of first-degree murder, armed burglary, and attempted armed burglary.

Upon appeal, Johnson contends that: (1) the prosecutor improperly commented on Johnson's failure to testify by noting to the jury that the opening statement given by Johnson himself was not evidence; (2) the circuit court lacked subject matter jurisdiction to try him on the armed burglary and attempted armed burglary charges because the prior waiver proceedings in juvenile court were premised upon burglary and attempted burglary charges, and (3) the trial court erroneously admitted evidence of a prior act and a prior statement of Johnson.  We conclude that the remarks of the prosecutor to the jury were not impermissible comment on Johnson's failure to testify.  We also conclude that the trial court had subject matter jurisdiction to try Johnson on the armed burglary and attempted armed burglary charges recited in the information.  Last,

we conclude that the trial court properly admitted evidence of Johnson's prior act and statement.

## FACTS

The facts presented at trial leading to Johnson's involvement in the events relating to the death of Marlys Fisher are not in issue and were not controverted by the defense.[1] As conceded in Johnson's brief, the only real issue at trial was his intent at the time he fired the shot that caused the death of Mrs. Fisher.

At approximately 6:30 p.m. on Friday evening, October 9, 1981, Johnson left the home of his foster parents in the city of Fond du Lac, telling them he was going to play football with some friends. Instead, he walked downtown, stole a bicycle and headed west on Forest Avenue Road, toward a rural area in the town of Fond du Lac. His route took him past the residence of Roger and Marlys Fisher, and he proceeded a half mile further to residence of Mr. Leslie Newton. The Newton home was temporarily unoccupied. Johnson entered the Newton home and stole a single-shot sixteen-gauge shotgun, a box of sixteen-gauge shotgun shells and a pair of handcuffs. He loaded the shotgun while in the Newton home. Johnson then proceeded back along Forest Avenue Road to the Fisher residence.

Armed with the loaded shotgun, Johnson walked up to the front door, opened the screen door and attempted to kick in the front door. Marlys Fisher was visible to Johnson through the glass window of this door as she pushed against the inside of the door in an effort to keep it shut. Johnson then ran to a rear corner of the Fisher home where double windows to the master bedrooms were located. About ten feet from the windows,

---

[1] Johnson did not testify, and the defense did not present any evidence.

Johnson stopped, raised the shotgun to his shoulder, aimed it at the double windows and fired. At this time, Mrs. Fisher was standing in the lighted hallway looking into the master bedroom through the partially opened door. She was approximately twenty-five feet from Johnson when the shotgun was fired. The shotgun pellets struck her in the chest. She died of blood loss caused by at least seventy shotgun pellet wounds to the left chest area.

Johnson recited in a custodial statement received into evidence that he did not know anyone was in his line of fire when he discharged the weapon. In his self-delivered opening statement to the jury, Johnson stated that the state could not prove any motive or intent on his part to kill or harm Mrs. Fisher.

Approximately one year earlier, on October 20, 1980, Johnson had burglarized the Fisher residence. He was adjudged delinquent for this offense in April of 1981.

## PROSECUTOR'S COMMENT ON JOHNSON'S OPENING STATEMENT

Johnson presented his own opening statement and did not testify. He contends that the prosecutor's statements cautioning the jury that Johnson's statements were not evidence and were not given under oath or subject to cross-examination were an improper comment on his failure to testify.[2] Johnson contends that the

---

[2] The prosecutor, having been forewarned that Johnson would make his own opening statement, made the following remarks to the jury as part of his opening statement:

I guess now more than at anytime before when I've given opening statements, I'm going to emphasize the first thing I ever tell the jury when I give an opening statement and you'll understand in a couple of minutes why. The one thing you have to remember is that whatever I tell you here this afternoon is not evidence. It isn't any more evidence to be considered by you in terms of the

prosecutor's statements were in violation of the rule set forth in *Griffin v. California,* 380 U.S. 609, 615, *reh'g denied,* 381 U.S. 957 (1965) :

disposition that you make of this case than are the newspaper articles or the TV commentary or whatever that you heard about the case in the past. I can't emphasize that too strongly today and I'll tell you why. Because the person who is going to follow me and give an opening statement is going to be Todd Johnson, and you must understand just as you do when I give the opening statement, that when you hear Todd Johnson speak to you later this afternoon that is not evidence and it can't be considered by you as evidence.

Johnson followed with his own opening statement and stated to the jury, in part, as follows:

It is natural to try to find a clear explanation or a motive, but sometimes none can be found. People do foolish things and dangerous things and then the lives of many people are changed forever. This is such a case.

The prosecution will show many—by many witnesses and exhibits what happened, but one important fact they won't be able to show, what went on in my head, what I intended to do. The evidence will not prove I did—didn't intend to shoot Mrs. or hurt Mrs. Fisher.

You said when you were being picked as jurors you would keep an open mind, to listen to the evidence and make a verdict based on only—only on the evidence and not on emotions. Please remember that. If you do I believe you will find me not guilty of first degree murder. There will be no intent to commit murder proven. Thank you.

In his closing argument the prosecutor stated as follows:

Let's reflect first upon the opening statement that was given by Todd Johnson. First of all just as in my opening statement you understand that Todd Johnson was not testifying, Todd Johnson was not under oath, Todd Johnson was not subjecting himself to cross examination in that opening statement. What he said he was entitled to say just as I was entitled to tell you what I did during my opening statement but it was not evidence, not when I said what I said and when Todd Johnson said what he said but remember some of the things he said in that prepared statement he read. He said that the State would not be able to prove what he intended to do on that evening. I submit to you that we have

[T]he Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt. [Footnote omitted.]

This issue, under these facts, is one of first impression in Wisconsin. A limited number of jurisdictions have, however, considered similar prosecutorial comment in a case where the defendant has not testified but has presented his own jury argument.

Some cases have held that a waiver of the protections of the fifth amendment occurs when a defendant addresses a jury in his own behalf. *See State v. Polk,* 485 P.2d 1241, 1242–43 (Or. Ct. App. 1971).[3] Others have held such a tactic to constitute a partial waiver permitting limited, but controlled, prosecutorial comment on the defendant's statement.[4] Other cases have found such comment to constitute, under the facts of the given case, harmless error.[5]

We begin by noting that: *"Griffin* has not been extended to automatically cover the situation in which

proved beyond any doubt whatsoever what he intended to do that evening and we will review that evidence and see whether you don't agree with me on that.

[3] The Oregon Court of Appeals, although not expressly labeling the defendant's tactic waiver, observed:

There is no merit in the contention because the comments were not improper in view of defendant's statements to the jury in closing argument which amounted to offering testimony which had not been presented during trial.

*Polk,* 485 P.2d at 1242–43.

[4] *See United States v. Follette,* 278 F Supp 1003, 1009 (E.D. N.Y.), *aff'd,* 397 F.2d 363 (2d Cir 1968), *cert. denied,* 393 U.S. 1039 (1969).

[5] *See United States v. Warner,* 428 F.2d 730, 740 (8th Cir.), *cert. denied,* 400 U.S. 930 (1970); and *Follette,* 278 F. Supp. at 1009–10.

either judge or prosecutor comments on defendant's failure to take the stand where the defendant is presenting a pro se defense." *United States v. Warner,* 428 F.2d 730, 738 (8th Cir.), *cert. denied,* 400 U.S. 930 (1970).

*United States v. Follette,* 278 F. Supp. 1003, 1007 (E.D. N.Y.), *aff'd,* 397 F.2d 363 (2d Cir. 1968), *cert. denied,* 393 U.S. 1039 (1969), states the competing interests at hand in a case such as that at bar:

> The law is presented with a dilemma. On the one hand, permitting defendant to defend himself without benefit of a lawyer's skills and objectivity may lead him to make statements which can be construed as a total waiver of his privilege against self-incrimination, exposing him to being called by the state. On the other, were defendant allowed to give, what is for all practical purposes, testimony without being subject to some check, the jury might be misled. Faced with such undesirable alternatives, the law seeks a middle ground which accommodates the essence of the opposing interests while furnishing maximum protection to all concerned.

We find the *Follette* statement of the dilemma facing the law accurate, and we adopt its concept of "partial waiver." *Follette,* however, does not provide a test by which to measure the propriety of the prosecutorial comment. This void is filled by *Bontempo v. Fenton,* 692 F.2d 954 (3d Cir. 1982), *cert. denied,* 460 U.S. 1055 (1983), where the trial court allowed the defendant to deliver a summation to the jury in addition to that made by his counsel. On rebuttal, the prosecution pointed out the defendant's failure to discuss crucial elements of the case and reminded the jurors that the only testimony they were to consider and evaluate was that which came from the witness stand under oath. In distinguishing *Griffin, Bontempo* observes:

> The case before us is different. Here, there was no direct reference in the summations to Bontempo's re-

fusal to take the stand other than his own comments and explanations. The prosecutor's rebuttal was directed, not to Bontempo's lack of testimony as such, but rather to the closing argument. The prosecutor's questioning about gaps in the narrative that Bontempo had given to the jury is a common way of attacking a defense summation, even one delivered by a lawyer.

*Id.* at 958–59.

*Bontempo* then addresses the effect of such an argument upon the jury:

The test for determining whether remarks are directed to a defendant's failure to testify is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *U.S. v. Chaney,* 446 F.2d 571, 576 (3d Cir. 1971). Questions about the absence of facts in the record need not be taken as comment on defendant's failure to testify. *Braxton v. Estelle,* 641 F.2d 392, 397 (5th Cir. 1981).

*Id.* at 959.

The law cannot operate in a vacuum in this situation. To do so would retreat from reality. Johnson himself had focused the jury's attention upon the claimed inability of the state to prove motive or intent. The state should not be prohibited from recognizing the reality of the situation. By presenting limited reply to such a tactic, the prosecution does not improperly comment upon an accused's failure to testify. Rather, the prosecution simply exercises its right to fair reply.

Each side has a right to have the case decided by a jury which is untainted by the prospect of confusion or misinformation. Although offered in a setting addressing a defendant's double jeopardy rights in the face of improper and highly prejudicial evidence introduced

by the defense, the statements of the United States Supreme Court in *Arizona v. Washington*, 434 U.S. 497, 516 (1978), are appropriate:

[I]n these circumstances, "the public's interest in fair trials designed to end in just judgments" must prevail over the defendant's "valued right" to have his trial concluded before the first jury impaneled. [Footnote omitted.]

So also here, the public's interest and right to a fair trial and the ultimate goal of the law to assure fair and just results to all parties should prevail over a defendant's right under the fifth amendment in a case where the defendant chooses not to testify but does present his own argument to the jury.

We note that the risk of juror consideration of arguments as evidence is well recognized.[6] Risk of such confusion in this case was recognized by the trial court even to the point of considering the delivery of a cautionary instruction to the jury.[7]

A close examination of the prosecutor's opening and closing statements does not reveal direct comment on Johnson's failure to take the stand. The remarks were aimed at drawing the jury's attention to the distinction between arguments and evidence. This is in precise

---

[6] We observe that an instruction cautioning against this possible confusion is part of the "boiler plate" instructions routinely given in criminal cases. While we are aware that the Wisconsin Judicial Benchbook may not be cited as independent authority, we do note that its recommended practices to trial judges suggests the giving of such an instruction as a preliminary instruction in a criminal case. *See I Wisconsin Judicial Benchbook*, Jury Trial, Preliminary Instructions CR 19–1 (1984).

[7] It does not appear, however, that the trial court followed through on this consideration by delivering a cautionary instruction at the time of Johnson's opening statement. Standard instruction Wis J I—Criminal 160 was part of the final instructions delivered to the jury.

keeping with the thrust of the standard instruction concerning arguments of counsel.[8] In both opening and closing statements, the prosecutor equated Johnson's statement with his own (the prosecutor's) and stressed that neither constituted evidence. Indeed, the prosecutor invited close juror attention to what both he and Johnson had to say.[9]

While the prosecutor's remarks might have prompted the jury to recall and reflect upon Johnson's failure to testify, we do not conclude that the remarks *highlighted* such a failure to testify. The remarks were directed at the manner in which the jury should consider the opening statement and did not address Johnson's failure to take the stand. Under the *Bontempo* test, which we adopt here, these remarks were not manifestly intended or of such a character that the jury would naturally and necessarily take them to be a comment on the failure of the accused to testify.

We recognize this is a fine line for a prosecutor to follow in a case where a defendant chooses to present his own argument(s) but not to testify. If the prosecutor chooses to comment on such a tactic, he must scrupulously limit such comment to the distinction between evidence and argument and must not cross over

---

[8] *See* Wis J I—Criminal 160.

[9] The prosecutor remarked:

One of the things that the Court talked about and counsel talked about in this case was that emotion and sympathy play no part in your disposition of this matter and that emotion and that sympathy can neither be directed towards Marlys and Roger Fisher nor can it be directed toward Todd Johnson even when he stands up here and talks to you this afternoon. Listen to what he has to say, but please now listen to what I have to say.

I want you to remember the admonishment that I gave you and Judge Buslee gave you about this not being evidence and I'll now like you to give the same kind of attention to Todd Johnson.

into the forbidden area of comment on an accused's failure to testify.

However, the peril occasioned by the choice of such a tactic also runs to the defense by inviting limited prosecutorial comment with the accompanying risk that it might prompt, in the minds of the jurors, remembrance of the defendant's failure to testify and speculation as to why. Such speculation should be, however, effectively checked by the trial court's cautionary instruction relative to the failure of a defendant to testify.[10]

The drawing of a bright line for all cases between permissible and impermissible comment is impossible. Whether such comment oversteps the bounds of the jury instruction and into the area of a constitutional violation must, of necessity, be determined on a case-by-case basis. Here, we conclude that the remarks of the prosecutor were well within the spirit and letter of the standard instruction, did not violate the *Bontempo* test, and served to correctly orient the jury as to those matters properly considered as evidence and those not.

## SUBJECT MATTER JURISDICTION

Because the waiver proceedings in juvenile court were conducted on the basis of a petition alleging burglary and attempted burglary (besides first-degree murder), Johnson contends that the circuit court was without subject matter jurisdiction to try him on the charges of armed burglary and attempted armed burglary ultimately recited in the information.[11]

[10] Such instruction was given in this case.

[11] The delinquency petition and the information also charged the offense of first-degree murder. Johnson does not challenge the trial court's subject matter jurisdiction on this charge.

Johnson relies on *Gibson v. State,* 47 Wis. 2d 810, 177 N.W.2d 912 (1970), in support of this claim. *Gibson,* however, is readily distinguished. Juvenile court jurisdiction over Gibson had been waived by the Milwaukee County Court, Children's Division, based upon allegations of multiple counts of party to the crime of robbery apparently occurring in Milwaukee county. Following waiver, Gibson's physical custody was transferred to Waukesha county, where he was then charged with an armed robbery occurring in Waukesha county and a robbery occurring in Milwaukee county. The supreme court remanded the case to the Waukesha county court in order to determine whether the Milwaukee county waiver proceedings included the Waukesha county armed robbery. If not, the supreme court held that the Waukesha county court did not acquire subject matter jurisdiction over the crime alleged to have occurred in Waukesha county. *Id.* at 817, 177 N.W.2d at 915–16.

In the instant case, the juvenile court did not expressly consider the specific charges ultimately recited in the information filed against Johnson in the adult court. However, the facts and circumstances in support of the charges in the information were the subject of the waiver proceeding.

The prosecutive merit phase of a waiver proceeding has been held analogous to a preliminary hearing in the adult court.

We view the determination of prosecutive merit under sec. 48.18(4) as more *functionally similar to the determination of probable cause in the preliminary examination* than to the determination of probable cause on a challenge to the complaint. Just as the court in the preliminary examination must determine that the state has sufficient evidence to bring a particular defendant to criminal trial, the juvenile court in determining prosecutive merit must determine that the state has sufficient evidence to compel the juvenile to be subjected to a criminal trial. [Emphasis added.]

*In Interest of T.R.B.,* 109 Wis. 2d 179, 190, 325 N.W.2d 329, 334 (1982).

Accordingly we hold that the juvenile court, before considering the waiver criteria, must satisfy itself that the record establishes to a reasonable probability that the violation of the criminal law alleged has been committed and that the juvenile has probably committed it. *This is the degree of probable cause required to bind over an adult for criminal trial.* [Emphasis added.]

*Id.* at 192, 325 N.W.2d at 335.

■

Since this phase of a juvenile waiver proceeding equates with a preliminary hearing in adult court, we conclude that the same rules governing subject matter jurisdiction as to counts charged in an information following preliminary examination when they were not charged in a complaint should apply. This rule is stated by our supreme court as follows:

In our view, sec. 970.03(10), Stats., does not prohibit a prosecutor from including in the information, once a defendant has been bound over, charges in addition to those advanced at the preliminary hearing, "so long as they are not wholly unrelated to the transactions or facts considered or testified to at the preliminary." *State v. Fish, supra,* page 438. This view is consistent with the legislative statement in sec. 970.03(1), that a preliminary hearing is held ". . . for the purpose of determining if there is probable cause to believe a felony has been committed by the defendant." Once it is determined that the defendant should be bound over for trial on at least one count, the purpose of the preliminary has been satisfied and the prosecutor may, in his discretion, allege such other offenses as permitted by the limitation stated above.

*Bailey v. State,* 65 Wis. 2d 331, 341, 222 N.W.2d 871, 876 (1974).

■

Since the counts of armed burglary and attempted armed burglary charged in the information were not

wholly unrelated to the transactions or facts considered or testified to at the waiver proceeding, the trial court had subject matter jurisdiction to try Johnson on those counts.

## PRIOR BURGLARY OF THE FISHER RESIDENCE

Johnson had previously burglarized the Fisher residence and had been adjudged delinquent for this offense in April of 1981. Evidence of this prior burglary was received at trial. Johnson argues that the admission of this evidence was contrary to secs. 904.04(2) and 904.03, Stats.

Section 904.04(2), Stats., provides as follows:

OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Application of this statute requires the trial court to apply a two-pronged approach in determining whether other crimes evidence is admissible. *State v. Spraggin,* 77 Wis. 2d 89, 95, 252 N.W.2d 94, 97 (1977). The first prong requires the trial court to determine whether the evidence qualifies under one of the exceptions stated in sec. 904.04(2), Stats. The trial court performed this function by finding that the evidence was admissible on considerations of motive, intent, and absence of mistake or accident. We agree.

Johnson had previously burglarized the Fisher residence and had been adjudged delinquent for such action. Revenge may well have precipitated the instant burglary

and shooting. Furthermore, prior to firing the fatal blast, Johnson saw a woman through the glass window of the interior door. He may well have killed Mrs. Fisher in an effort to avoid her likely identification of him.[12] Thus, the evidence was relevant as to motive.

Johnson claimed in his statement to the authorities that he saw no one inside the Fisher home when he discharged the shotgun. This placed at issue the question of whether Johnson's shooting of Mrs. Fisher was an accident or mistake. Evidence of the prior burglary would serve to indicate Johnson's familiarity with the premises and perhaps knowledge of the layout of its interior. This, in turn, would bear upon Johnson's knowledge as to the likelihood of the shotgun blast to inflict harm to any occupants. The evidence was, therefore, also relevant as to Johnson's claim of accident and mistake and as to his knowledge.

Matters going to motive, claims of accident or mistake, and knowledge are inextricably caught up with and bear upon considerations of intent—the overriding issue in this case. Therefore, the evidence was also relevant as to intent.

The trial court did not expressly exercise its discretion under the second prong of *Spraggin* by determining under sec. 904.03, Stats.,[13] whether the prejudice in-

---

[12] We agree with the state's argument that the actual ability of Mrs. Fisher to identify Johnson with respect to either Fisher burglary is of no import. Rather, the question is whether Johnson could reasonably believe that she could do so.

[13] Section 904.03, Stats., reads as follows:

Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

herent in such evidence outweighed its probative value. *Spraggin,* 77 Wis. 2d at 95, 252 N.W.2d at 97. However, even in a case where the trial court does not make such express ruling, the giving of a cautionary instruction with respect to other crimes evidence can reveal that the trial court considered the possibly prejudicial nature of such evidence and was seeking to ensure that it was properly utilized by the jury in reaching its verdict. *See State v. Pharr,* 115 Wis. 2d 334, 348, 340 N.W.2d 498, 504 (1983). Such an instruction was given in this case.[14] Thus, we conclude the trial court implicitly performed the balancing function under sec. 904.03, Stats.

Additionally, our independent review of the record satisfies us that the probative value of the prior burglary evidence outweighs its prejudicial aspects.[15] As previously noted, the critical issue was Johnson's claimed lack of intent to shoot Mrs. Fisher. In order to meet its burden on this element, the state was properly permitted to present evidence that " 'furnishes part of the context of the crime' or is necessary to a 'full presentation' of the case." *See State v. Shillcutt,* 116 Wis. 2d 227, 236, 341 N.W.2d 716, 720 (Ct. App. 1983), *aff'd on other grounds,* 119 Wis. 2d 788, 350 N.W.2d 686 (1984), quoting *United States v. Masters,* 622 F.2d 83, 86 (4th Cir. 1980). Since Johnson's statement, which was presented as part of the state's case-in-chief, placed at issue the claim of an unintentional homicide,[16] the probative value of the prior burglary evidence and its application to considerations of motive, knowledge, ab-

---

jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[14] *See* Wis J I—Criminal 275.

[15] This procedure follows the mandate of *Pharr,* 115 Wis. 2d at 343–44, 340 N.W.2d at 501–02.

[16] This was also stressed by Johnson himself in his opening statement to the jury.

sence of mistake or accident, and, most importantly, intent is not substantially outweighed by its prejudice. Given the matters at issue, we do not view the use of such evidence in this case as "piling on," "a final kick at the cat," or running the "calculated risk" condemned by *Whitty v. State*, 34 Wis. 2d 278, 297, 149 N.W.2d 557, 565–66 (1967), *cert. denied*, 390 U.S. 959 (1968).

Johnson erroneously relies upon *State v. Cartagena*, 99 Wis. 2d 657, 299 N.W.2d 872 (1981), wherein the trial court erroneously admitted evidence of a third unrelated shooting which had occurred before either of the two shootings which gave rise to the charges being tried. *Cartagena*, however, notes that had the companion charge directly involving the victim been charged separately, such evidence of the prior shooting would be admissible to show the defendant's motive in the attempted murder charge. *Id.* at 669, 299 N.W.2d at 879. As the state correctly points out, the offending character of the other conduct evidence in *Cartagena* was its demonstration of a generalized motive as opposed to a specific motive to commit a particular crime. Such "linkage" found lacking in *Cartagena* is present in this case. *Cartagena* thus supports the state's position rather than Johnson's.

## JOHNSON'S PRIOR STATEMENT

Evidence was received of a conversation between Johnson and Scott Gibson wherein Johnson stated that he would shoot anyone who interrupted him in the course of a robbery.[17] Johnson claims this evidence was irrele-

---

[17] The testimony was as follows:
MR. HAAG: . . .

Q. Scott, state whether or not you asked Todd Johnson a question about what he would do if someone came home while he was robbing this house? Did you ask him that question?

vant and prejudicial because it occurred approximately six months before the Fisher incident. We disagree.

Although the discussion of this issue at trial and on appeal addresses this evidence in terms of other acts under sec. 904.04 (2), Stats., we conclude the evidence more properly qualifies as an admission pursuant to sec. 908.01 (4) (b) 1, Stats.[18] Under this statute, out-of-court statements made by a party are admissible against him at trial whether or not they are "against interest." *State v. Benoit*, 83 Wis. 2d 389, 402, 265 N.W.2d 298, 304 (1978). Such statements are not hearsay and are admissible if otherwise relevant and not prejudicial in the trial context. *Id.*

A. Yes.

Q. What if anything did Todd Johnson say to you?

A. Well, the question was stated, "Would you shoot anybody if anybody ever came home," and his reply was only if he had to.

MR. HAAG: No further questions.
THE COURT: MR. CONTI?

CROSS EXAMINATION BY MR. CONTI:

Q. In what context was that conversation, Scott? How did that statement come up?

A. Well, it was just after a series of robberies in the neighborhood and I think he was released after that. It was just after the robberies. They were investigating them and we were riding on the bus together.

[18] Section 908.01 (4) (b) 1, Stats., reads as follows:

(4) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:
. . . .
(b) *Admission by party opponent.* The statement is offered against a party and is:
1. His own statement, in either his individual or a representative capacity . . . .

Although the trial court's consideration of this evidence under sec. 904.04(2), Stats., was misplaced, it nonetheless addressed considerations of relevancy as required by that statute. Considerations of relevancy involve an exercise of discretion. In such a case, we seek only to assure ourselves that discretion was exercised in accord with accepted legal standards and in accordance with the facts of record. *State v. Wollman,* 86 Wis. 2d 459, 464, 273 N.W.2d 225, 228 (1979).

We again note that the crucial issue in this case was Johnson's intent to shoot Mrs. Fisher. He had been observed by her as he attempted to forcibly enter her residence. In the face of these facts, Johnson's previous statement that he would shoot anyone who discovered him in the course of a robbery, "if he had to," bore prominently on the issue of his intent and state of mind. The trial court weighed the probative value of the statement against its prejudicial aspects. We find no abuse of discretion in the decision to admit the statement.

*By the Court.*—Judgment affirmed.