140 Nev., Advance Opinion 10

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

JOEY TERRALL CHADWICK,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 86161-COA

FILED

FEB 29 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of leaving the scene of an accident involving personal injury. Eighth Judicial District Court, Clark County; Bita Yeager, Judge.

*Affirmed.*

Steven S. Owens, Henderson,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Alexander G. Chen and Karen Mishler, Chief Deputy District Attorneys, Clark County,
for Respondent.

_____

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

*OPINION*

By the Court, WESTBROOK, J.:

Appellant Joey Terrall Chadwick was convicted of one count of leaving the scene of an accident involving personal injury. On appeal,

24-07307

Chadwick contends that the district court abused its discretion in admitting other bad act evidence of his alcohol consumption and apparent intoxication prior to the accident in contravention of NRS 48.045(2).

Nevada's appellate courts have not previously addressed the admissibility of evidence of a defendant's alcohol consumption and apparent intoxication while driving in cases where the defendant is charged with leaving the scene of an accident in violation of NRS 484E.010. We conclude that the district court did not abuse its discretion by admitting this evidence because it was relevant to Chadwick's motive to flee, proven by clear and convincing evidence, and not unfairly prejudicial.

Chadwick also argues that the district court erred by failing to hold a *Petrocelli*[1] hearing and provide *Tavares*[2] limiting instructions prior to the admission of testimony that he threatened a witness and belonged to a gang. In addressing these arguments, we conclude that when bad act evidence is directly elicited by the defendant, it is incumbent upon the defendant to request a limiting instruction, and if they do not do so, the district court is not obligated to raise the issue or provide one sua sponte. Because Chadwick directly elicited testimony about the threat and did not request a limiting instruction, the court did not err in failing to conduct a *Petrocelli* hearing or provide a *Tavares* instruction. Further, Chadwick has not established unfair prejudice from the admission of gang affiliation evidence. Accordingly, we affirm.

---

[1]*Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985), *superseded in part by statute as stated in Thomas v. State*, 120 Nev. 37, 44-45, 83 P.3d 818, 823 (2004).

[2]*Tavares v. State*, 117 Nev. 725, 30 P.3d 1128 (2001), *holding modified on other grounds by Mclellan v. State*, 124 Nev. 263, 182 P.3d 106 (2008).

## FACTS AND PROCEDURAL HISTORY

On October 31, 2021 (Halloween night), Chadwick accidentally ran over and injured three-year-old T.B., who was crossing the street while trick-or-treating, without stopping or returning to the scene. At the time of the accident, Chadwick was driving an older white van with his friend, Helen Henry, in the passenger seat. Chadwick and Henry were both members of the Bloods gang, and the accident occurred in a neighborhood where rival gang members lived.

The day after the accident, Henry returned to the scene and told T.B.'s family that Chadwick was the one who hit T.B., though she did not mention that she was also in the van at the time of the accident. The following day, Chadwick went to the police station and turned himself in. He denied drinking the night of the accident and wrote a voluntary statement indicating that he drove away because he thought he only hit a pothole. Chadwick was eventually charged with leaving the scene of an accident involving personal injury and reckless driving resulting in substantial bodily harm.

Prior to trial, the State filed a motion to admit evidence of Chadwick's intoxication to show his motive to flee from the scene of the accident and to impeach his claims to law enforcement that he did not consume alcohol that night or know he was in an accident. The district court held a *Petrocelli* hearing, where Henry testified about Chadwick's alcohol consumption and apparent intoxication prior to the accident. Henry testified that when Chadwick picked her up the night of the accident, his eyes were red and he smelled of alcohol. According to Henry, they went to a house party where Chadwick drank at least half a bottle of Hennessey cognac, and they shared a bottle of Barton vodka. Henry also testified that Chadwick snorted "powder."

COURT OF APPEALS
OF
NEVADA

(O) 1947B

3

After the *Petrocelli* hearing, the district court granted the State's motion in part and allowed Henry to testify about her direct observations, including Chadwick's alcohol consumption prior to the accident. However, the court precluded Henry from testifying that Chadwick snorted powder because Henry had no actual knowledge of what the powder was.

The matter proceeded to a jury trial. In its case-in-chief, the State introduced into evidence Chadwick's recorded interview with police and his voluntary statement. The State's key witness was Henry.

On direct examination, Henry testified that when Chadwick picked her up on the night of the accident, he smelled "[v]ery moderate[ly]" of alcohol, his eyes were "yellowish red like you can tell he was drinking," and he appeared to be a "little drunk." Henry also testified about their alcohol consumption at the house party with the aid of demonstrative exhibits depicting bottles of Hennessey and Barton liquor similar to what they consumed that evening. Henry testified that Chadwick drank "half" of a 750 ml bottle of Barton and "[t]hree red cups" of Hennessey.

According to Henry, the accident occurred after they left the party to get some food. Chadwick had slowed down at an intersection, waiting for a group of children to cross the street after an adult called them over. When Chadwick accelerated, Henry saw a little girl suddenly dart out in front of the van so fast that Chadwick could not avoid hitting her. Henry testified that it felt like "[a] speed bump" when the girl went under the driver's side of the vehicle. Henry looked back and saw a body in the street, then told Chadwick that he just hit a young girl. According to Henry, Chadwick denied hitting the girl and told Henry "to calm down" and "say nothing."

Henry testified that Chadwick sped away from the scene and did not slow down until they reached a nearby Dotty's Casino, where they inspected the van for damage. Henry saw a shattered left headlight with blood and pink barrettes in it. When Henry told Chadwick they needed to call the police, Chadwick allegedly told her, "You're the only witness and only person that knows I was driving." This comment made Henry feel unsafe, so she left and got a ride home.

On cross-examination, Chadwick asked Henry about her status as a gang member. Henry affirmed that she was in a gang, and when Chadwick asked which gang she belonged to, the State objected before Henry could answer. During a sidebar, the State argued that the question about Henry's gang affiliation was highly prejudicial and would open the door to questions about Chadwick's own gang affiliation. Chadwick responded that Henry's gang membership was relevant to why she did not report the accident to law enforcement because "if word got [out] on the street that she was" involved with the accident, she would face retaliation from the rival gang. The court determined that Chadwick's question would open the door to Chadwick's own gang affiliation because "[t]hat same motive, if he is a part of a gang, goes as to why he wouldn't stop when he's in a gang area[,] that they're the kids of gang members and he doesn't report it. I think it goes both ways." Following the sidebar, Chadwick proceeded to ask Henry what gang she was affiliated with, and she admitted to being a member of the Bloods. Chadwick then asked Henry an open-ended question about why she did not report the accident, and Henry responded that Chadwick had "threatened" her.

During redirect examination, the State asked Henry follow-up questions about Chadwick's threat and how Chadwick's gang affiliation was

related to that threat. In response, Henry testified that Chadwick was also in the Bloods and that, after the accident, he told her, "[d]on't snitch" because of "what happens to snitches." Chadwick did not object or move to strike Henry's testimony about his gang affiliation or the threat.

The State presented testimony from members of T.B.'s family, who witnessed the van speeding away from the scene. T.B.'s mother testified about T.B.'s injuries, including a gash on her forehead and scalp damage, which required a two-week hospital stay. The State also presented testimony from several individuals involved in the Las Vegas Metropolitan Police Department (LVMPD) investigation. Of note, LVMPD hit-and-run detective Michael Almaguer testified that when Chadwick's van was impounded, the van's left headlight was nonfunctional and had significant damage that appeared to be recent. Detective Almaguer also stated that there were no irregularities in the roadway, such as potholes, near the scene of the accident. On cross-examination, Almaguer confirmed that his initial investigation did not indicate that drugs or alcohol were involved, but he clarified that it was impossible to investigate and collect evidence of driving under the influence because the driver left the scene.

After the State rested, Chadwick testified in his own defense. Chadwick averred that when he drove himself and Henry to the house party, neither of them had consumed any alcohol. Shortly after getting to the party, Henry asked Chadwick to go to McDonald's. Chadwick testified that when they left the house party, he *still* had not consumed any alcohol.

Chadwick testified that, on their way to McDonald's, he heard a "thump" and believed he had hit a pothole in the street. Chadwick looked in his rearview mirror and did not see anything, so he proceeded to McDonald's. Chadwick testified that because the van often made similar

noises and he did not see anything in his mirrors, he had no reason to think he was in an accident. He further testified that there were no kids at the intersection when he stopped, but in any event, he would not have been able to see T.B. cross the street due to the van's height, the van's side window tint, and the unlit streetlamps. Chadwick also testified that Henry was leaning back in the passenger chair at the time of the accident, so she could not have seen the accident, nor did she inform him that he hit a child.

Chadwick testified that when they got to McDonald's, Henry immediately asked him to take her home. From McDonald's, he drove to Dotty's Casino, where Chadwick stated he was looking for a friend. Chadwick did not find his friend at Dotty's but did notice that the left headlight of the van was broken. He stated that the headlight still worked, so he assumed the damage was from a rock or debris. Chadwick testified that there was no blood or barrettes on the headlight. The two drove from Dotty's toward Henry's house and passed by Chadwick's friend's house. Chadwick said that he wanted to stop by quickly, at which point Henry became upset and got out of the van. Chadwick drove alone to his mother's house.

Chadwick testified that the next morning, people told him that a person was run over by a white van the night before in the area where Chadwick had been driving, and they asked Chadwick if he was involved. Chadwick "put two and two together" and felt compelled to "go up and clear my name when I seen that family on that street on the news that evening."

The jury ultimately found Chadwick guilty of leaving the scene of an accident involving personal injury, but acquitted him of the other filed charge, reckless driving resulting in substantial bodily harm. Chadwick received a sentence of 72-240 months in prison and timely appealed.

## ANALYSIS

*The district court did not err in admitting evidence of Chadwick's alcohol consumption and apparent intoxication while driving*

Chadwick contends that the district court abused its discretion by admitting other bad act evidence of his alcohol consumption and "drunk driving." NRS 48.045(2) governs the admissibility of "[e]vidence of other crimes, wrongs or acts" and provides that such evidence may not be used to establish a defendant's propensity to commit the alleged act. Nevertheless, evidence of a defendant's other bad acts may be introduced for nonpropensity purposes, for instance, to establish "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." NRS 48.045(2). However, before a district court can admit other bad act evidence, it must first conduct a *Petrocelli* hearing outside the presence of the jury and determine that "(1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Tinch v. State*, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997), *holding modified by Bigpond v. State*, 128 Nev. 108, 270 P.3d 1244 (2012); *Tavares v. State*, 117 Nev. 725, 731, 30 P.3d 1128, 1131 (2001), *holding modified on other grounds by Mclellan v. State*, 124 Nev. 263, 182 P.3d 106 (2008). This court reviews a district court's decision to admit other bad act evidence for an abuse of discretion. *Mclellan*, 124 Nev. at 269, 182 P.3d at 110.

Chadwick argues that the evidence of his alcohol consumption and apparent intoxication while driving did not satisfy the three *Tinch*

factors because it was irrelevant, unsupported by clear and convincing evidence, and unfairly prejudicial. We disagree.[3]

First, the evidence of Chadwick's alcohol consumption and apparent intoxication while driving was relevant to the charge of leaving the scene of an accident involving personal injury. As noted above, motive is a proper nonpropensity purpose for admitting bad act evidence. *See* NRS 48.045(2). In this case, evidence that Chadwick consumed copious amounts of alcohol and appeared to be intoxicated while driving was relevant because it provided a motive for him to flee after the accident. *See, e.g., State v. Sutton*, No. 18CA0057-M, 2020 WL 2319311, ¶ 30 (Ohio Ct. App. May 11, 2020) (providing that, where a defendant was charged with the failure to stop after an accident, an officer's testimony that he "smelled the odor of alcohol on [the appellant's] breath had probative value with respect to [the appellant's] . . . possible motivation for leaving the scene"); *Gillum v. Commonwealth*, No. 2002-SC-0415-MR, 2004 WL 1907027, *3 (Ky. Aug. 26, 2004) (stating that an officer's "testimony as to Appellant's consumption of alcohol and state of intoxication appears to be relevant to the charge of

---

[3]The district court does not appear to have given *Tavares* limiting instructions in connection with this evidence; however, Chadwick did not raise this issue in his appellate briefs, and only mentioned it in passing for the first time at oral argument. Therefore, we do not consider it. *See State ex rel. Dep't of Highways v. Pinson*, 65 Nev. 510, 530, 199 P.2d 631, 648 (1948) ("The parties, in oral arguments, are confined to issues or matters properly before the court, and we can consider nothing else . . . ."); *see also State v. Eighth Jud. Dist. Ct. (Doane)*, 138 Nev., Adv. Op. 90, 521 P.3d 1215, 1221 (2022) ("[I]n both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decisions and assign to courts the role of neutral arbiter of matters the parties present." (alteration in original) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008))).

leaving the scene of the accident . . . and was properly admitted"); *State v. Kovalik*, No. 92-2213-CR, 1993 WL 112024, *2 (Wis. Ct. App. Apr. 14, 1993) (concluding that evidence of driving while intoxicated was relevant to appellant's motive and intent to elude an officer).

Chadwick argues that his motive to flee "was only minimally relevant" because he admitted to leaving the scene of the accident, and therefore the element of flight was already established. *See* NRS 484E.010(1) (providing that "[t]he driver of any vehicle involved in a crash . . . resulting in bodily injury or death shall immediately stop his or her vehicle at the scene of the crash or as close thereto as possible, and shall forthwith return to and in every event shall remain at the scene of the crash until the driver has fulfilled the requirements of NRS 484E.030"). However, the State was also required to establish criminal intent by proving that Chadwick knew or should have known he was involved in an accident when he left the scene. *See Clancy v. State*, 129 Nev. 840, 847, 313 P.3d 226, 230-31 (2013). And Chadwick's motive to flee was relevant to this question of criminal intent. *See* NRS 48.015 (stating that evidence is relevant if it has any tendency to make a fact of consequence more or less probable).

In a similar case, the Wisconsin Supreme Court explained why evidence of driving under the influence would be relevant to establish that the appellant had a motive to flee and therefore "knowingly fle[d] or attempt[ed] to elude" an officer. *Kovalik*, No. 92-2213-CR, 1993 WL 112024, *2. Like Chadwick, the appellant argued that the evidence was irrelevant because "motive was not an element" of the crime and because "evidence of intoxicated driving does not make it more probable that he knowingly attempted to elude an officer." *Id.* In rejecting both arguments, the court explained,

"Matters going to motive . . . are inextricably caught up with and bear upon considerations of intent . . . ." *State v. Johnson*, 121 Wis. 2d 237, 253, 358 N.W.2d 824, 832 (Ct. App. 1984). [Appellant] does not persuade us that the trial court erroneously exercised its discretion in holding that the evidence was admissible as being relevant. Although it cannot be said that drinking makes a person more likely to try to elude the police, it is generally well known that penalties for [operating a motor vehicle while intoxicated (OWI)] are severe. The evidence that [appellant] may have been drinking or was intoxicated could make it more probable that [appellant] intended to elude the police in order to avoid the OWI penalties.

*Id.* (first and second alterations in original).

We agree with the reasoning in *Kovalik*. "Even though motive is not an element of a crime and need not be proven, it has virtually always been an integral element of proof in a criminal trial." *Richmond v. State*, 118 Nev. 924, 942, 59 P.3d 1249, 1261 (2002) (Shearing, J., concurring in part and dissenting in part); *see also Shults v. State*, 96 Nev. 742, 748-49, 616 P.2d 388, 392-93 (1980) (holding that because "the prosecution is entitled to present a full and accurate account of the circumstances surrounding a crime," the district court did not abuse its discretion by admitting other crimes evidence that was relevant to motive (internal quotation marks omitted)). Motive has been described as the "reason that nudges the will and prods the mind to indulge the criminal intent." *United States v. Benton*, 63 F.2d 1052, 1056 (5th Cir. 1981). A motive thus operates as an "incentive for criminal behavior." *People v. McKinnon*, 259 P.3d 1186, 1224 (Cal. 2011).

Here, Chadwick's motive to flee was relevant to the knowledge element of the crime because it offered an alternative explanation for why he left the scene—that he *knew* he had hit a child but sought to avoid the criminal penalties associated with driving under the influence of alcohol. The State was entitled to present the jury with this alternative to the explanation offered by Chadwick—that he failed to stop because he *did not know* about the accident. Had Chadwick remained at the scene after hitting T.B., officers may have determined that he was intoxicated. *See, e.g., Weaver v. State, Dep't of Motor Vehicles*, 121 Nev. 494, 499, 117 P.3d 193, 197 (2005) (concluding that a police officer had a reasonable belief that the appellant was intoxicated at the time of the accident where he "smelled strongly of alcohol, had watery bloodshot eyes, and slurred his speech when he spoke"). Because the crash resulted in an injury, Chadwick risked being arrested on a charge of driving under the influence causing substantial bodily harm, which carries a potential sentence of imprisonment of 2 to 20 years. *See* NRS 484C.430(1).[4] Instead, because Chadwick left the scene, investigators could not determine whether alcohol was involved in the accident, and he was not charged with that crime. Therefore, the evidence of Chadwick's alcohol consumption and apparent intoxication offered a

[4]At oral argument, Chadwick suggested that, because the penalty for leaving the scene of an accident resulting in injury was the same as the penalty for driving under the influence causing substantial bodily harm, he would not have had a motive to flee. However, by leaving the scene, Chadwick might have avoided *any* penalty, had his vehicle not been identified by others, which he testified prompted him to come forward two days later.

motive for him to flee, making it less likely that he failed to stop simply because he was unaware of the accident.[5]

Second, Chadwick's alcohol consumption and apparent intoxication while driving were established by clear and convincing evidence through Henry's testimony at the *Petrocelli* hearing. Testimony alone can establish an act by clear and convincing evidence. *See Meek v. State*, 112 Nev. 1288, 1295, 930 P.2d 1104, 1108 (1996) (stating that "clear and convincing evidence can be provided by a victim's testimony alone"). However, personal knowledge on the part of the testifying witness is necessary. *See Randolph v. State*, 136 Nev. 659, 662, 477 P.3d 342, 347 (2020) (holding that "the district court erred in finding that the State proved the prior bad acts by clear and convincing evidence by [a witness's] testimony alone" where the testimony was not based on the witness's firsthand knowledge); *accord Lane v. Second Jud. Dist. Ct.*, 104 Nev. 427, 446, 760 P.2d 1245, 1257 (1988) ("[T]o be competent to testify, a witness must have personal knowledge of the subject of his testimony.").

Here, Henry's testimony was based on her direct observations of Chadwick and was rationally based on her perceptions. When Chadwick picked Henry up, she saw that Chadwick had red eyes and smelled alcohol on him. Henry also watched Chadwick consume large quantities of Hennessey and Barton at a party before getting behind the wheel of his vehicle. Because a proper foundation was laid in this case, Henry's

---

[5]Chadwick also suggests that the district court erred by overruling his relevance objection to the generic pictures of liquor bottles. However, the State utilized the photos for demonstrative purposes only to help Henry identify the type and amount of liquor that Chadwick drank on the night of the accident. This was not an abuse of discretion. *Mclellan*, 124 Nev. at 269, 182 P.3d at 110.

eyewitness testimony about Chadwick's consumption and her lay opinion testimony regarding Chadwick's apparent intoxication were admissible. *See* NRS 50.265; *Dooley v. United States*, 577 F. Supp. 3d 229, 236 (S.D.N.Y. 2021) ("It is settled that a lay witness can offer an opinion as to a person's intoxication."); *Durant v. United States*, 551 A.2d 1318, 1324 (D.C. Cir. 1988) ("[B]ecause alcohol intoxication is considered to be a matter of common knowledge, lay witnesses may render opinion testimony regarding alcohol intoxication.").

To the extent that Chadwick argues Henry was not a credible witness because she was intoxicated herself on the night of the accident, the district court had an opportunity to observe Henry and determine her credibility, which we do not reweigh on appeal. *See Tinch*, 113 Nev. at 1175, 946 P.2d at 1064 ("It is not this court's prerogative to determine the credibility of witnesses below."). Indeed, the record reflects that the district court meaningfully analyzed the evidence presented and we perceive no abuse of discretion in its conclusion that Henry's testimony provided clear and convincing evidence of Chadwick's alcohol consumption and intoxication while driving.[6]

Third, evidence of Chadwick's alcohol consumption and intoxication was not "substantially outweighed by the danger of unfair prejudice." *Id.* at 1176, 946 P.2d at 1064-65. Though the evidence was prejudicial, "all evidence against a defendant will on some level 'prejudice' (*i.e.*, harm) the defense," and so the focus in NRS 48.045(2) is on "unfair" prejudice. *State v. Eighth Jud. Dist. Ct. (Armstrong)*, 127 Nev. 927, 933,

---

[6]Notwithstanding the court's pretrial ruling, Chadwick was able to argue to the jury that Henry's testimony was not credible because of her own alcohol consumption.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

267 P.3d 777, 781 (2011). Unfair prejudice is defined as an appeal "to the emotional and sympathetic tendencies of a jury, rather than the jury's intellectual ability to evaluate evidence." *Krause Inc. v. Little*, 117 Nev. 929, 935, 34 P.3d 566, 570 (2001). In this case, the record does not reflect that the evidence of Chadwick's alcohol consumption and apparent intoxication prevented the jury from intellectually evaluating the evidence. To the contrary, the jury acquitted Chadwick of felony reckless driving, which implies that the jury was able to properly evaluate the evidence even after learning of Chadwick's alcohol consumption and apparent driving while intoxicated. Therefore, we conclude that the district court did not abuse its discretion in admitting evidence of Chadwick's alcohol consumption and apparent intoxication while driving.[7]

*Evidence of Chadwick's threat and gang affiliation*

Chadwick argues that the district court abused its discretion by allowing Henry to testify that Chadwick was a gang member who threatened her after the accident not to "snitch" because of "what happens

---

[7]Because this evidence was admissible to establish Chadwick's motive to flee and, inferentially, his knowledge of the accident, we necessarily reject Chadwick's claim that it was inadmissible in the State's case-in-chief "as preemptive impeachment" using extrinsic evidence of a collateral matter. *Cf. Jezdik v. State*, 121 Nev. 129, 136-37, 110 P.3d 1058, 1063 (2005) (discussing the collateral fact rule and stating, "[i]t is error to allow the State to impeach a defendant's credibility with extrinsic evidence relating to a collateral matter") (alteration in original) (internal quotation marks omitted)). To be "collateral," facts must be "outside the controversy, or . . . not directly connected with the principal matter or issue in dispute." *Id.* at 137, 110 P.3d at 1063 (quoting *Lobato v. State*, 120 Nev. 512, 518, 96 P.3d 765, 770 (2004)) (further internal quotation marks omitted)). Here, the evidence of Chadwick's consumption and intoxication was directly connected with an element of the charged crime—knowledge—and was not collateral.

to snitches." Chadwick contends that this evidence was erroneously admitted without a *Petrocelli* hearing or *Tavares* limiting instructions.

*Failure to conduct a* Petrocelli *hearing*

When the State seeks to admit bad act evidence, it bears the burden of requesting a *Petrocelli* hearing outside the presence of the jury to determine its admissibility under *Tinch*'s three-part test. *See generally Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985), *superseded in part by statute as stated in Thomas v. State*, 120 Nev. 37, 44-45, 83 P.3d 818, 823 (2004). However, the "failure to conduct a *Petrocelli* hearing is not reversible error when the record is sufficient to establish that the evidence is admissible under [*Tinch*] or the trial result would have been the same had the trial court excluded the evidence." *Diomampo v. State*, 124 Nev. 414, 430, 185 P.3d 1031, 1041 (2008). Additionally, if the defendant fails to object to the absence of a *Petrocelli* hearing, an appellate court may review only for plain error affecting the defendant's substantial rights. *Id.*

Assuming for the sake of argument that Chadwick's threat was a bad act that required a *Petrocelli* hearing,[8] Chadwick invited any error in its admission. The invited error doctrine "establish[es] that ordinarily inadmissible evidence may be rendered admissible when the complaining

---

[8]*Compare Evans v. State*, 117 Nev. 609, 628, 28 P.3d 498, 512 (2001) ("Evidence that after a crime a defendant threatened a witness with violence is directly relevant to the question of guilt. Therefore, evidence of such a threat is neither irrelevant character evidence nor evidence of collateral acts requiring a hearing before its admission." (footnote omitted)), *overruled on other grounds by Lisle v. State*, 131 Nev. 356, 366 n.5, 351 P.3d 725, 732 n.5 (2015), *with Bellon v. State*, 121 Nev. 436, 444-45, 117 P.3d 176, 181 (2005) (holding that a defendant's threat to officers during his arrest was "more reflective of his frustration at being arrested than demonstrative of his consciousness of guilt" and inadmissible under NRS 48.045(2)).

party is the party who first broached the issue." *Taylor v. State*, 109 Nev. 856-67, 858 P.2d 843, 848 (1993) (Shearing, J., concurring in part and dissenting in part). Here, Chadwick directly elicited the testimony he complains of on cross-examination by asking Henry an open-ended question about why she did not report the accident. In response to Chadwick's questioning, Henry testified that he "threatened me that if I told, he was going to do something to me." Although the State asked follow-up questions about the substance of Chadwick's threat on redirect, Chadwick had already introduced the bad act into evidence. Under these circumstances, we conclude that Chadwick invited any error from the admission of the threat without a *Petrocelli* hearing. *See Carter v. State*, 121 Nev. 759, 769, 121 P.3d 592, 599 (2005) (holding that the defense elicited the bad act testimony and was "estopped from raising any objection on appeal"); *Taylor*, 109 Nev. at 856-57, 858 P.2d at 848.

As for the gang affiliation testimony, Chadwick did not object to its admission, and we conclude that the district court did not plainly err in admitting it without a *Petrocelli* hearing.[9] *See Green v. State*, 119 Nev.

---

[9]The State argues that Chadwick invited any error by asking Henry questions about her gang affiliation after the district court warned him that doing so would open the door to evidence of his own gang affiliation. We disagree. The district court ruled that if Chadwick asked Henry about her gang affiliation to establish her fear of a rival gang as a motive for *her* actions, it would open the door to allow the State to ask about Chadwick's gang affiliation to establish a similar motive for *his* actions—e.g., that he fled the scene because he feared retaliation by the rival gang for running over one of their children. However, the State did not use the evidence for the limited purpose permitted by the court. Instead, during the State's redirect examination of Henry, it questioned Henry about Chadwick's gang

COURT OF APPEALS
OF
NEVADA

(O) 1947B

17

542, 545, 80 P.3d 93, 95 (2003) (holding that a defendant must show actual prejudice or a miscarriage of justice to establish plain error). There is no indication that the jury convicted Chadwick based on his gang affiliation. Neither the State nor Chadwick argued that the accident itself was gang-related or that Chadwick's gang affiliation went to any material element of the offense. Rather, the evidence was offered for the limited purpose of explaining *Henry's* conduct and substantiating why she did not report the accident to law enforcement. Although the evidence was used to illustrate the seriousness of Chadwick's threat, the State only made one brief reference to it at trial. Chadwick's gang affiliation was also not mentioned by either party in closing argument. In light of the minimal testimony on the subject of Chadwick's gang affiliation and its collateral nature being in relation to a witness's conduct rather than his own, Chadwick cannot establish actual prejudice or a miscarriage of justice from the admission of his gang affiliation without a *Petrocelli* hearing, and therefore he cannot demonstrate plain error. *See Tinch*, 113 Nev. at 1176, 946 P.2d at 1065

---

affiliation to provide context for his *threat* about what would happen to Henry if she reported him to police.

Immediately after asking Henry about Chadwick's gang affiliation, the State asked Henry to describe how he threatened her. In this way, the State tied the evidence of Chadwick's gang affiliation to his threat about what happens to "snitches," to make his threat appear more serious because it carried the force of gang violence behind it. Because the evidence of Chadwick's gang affiliation was introduced for a purpose that was outside the scope of the district court's ruling, we cannot find that he invited this alleged error by opening the door. *Cf. Dickey v. State*, 140 Nev., Adv. Op. 2, 540 P.3d 442, 451 (2024) ("When admitting evidence for limited purposes under NRS 48.045(2), limiting instructions must instruct the jury to consider only those purposes for which the evidence was actually admitted.").

("Other state and federal courts have found gang-affiliation evidence relevant and not substantially outweighed by unfair prejudice when it tends to prove motive." (internal quotation marks omitted)).

*Failure to give* Tavares *instructions*

In *Tavares*, the Nevada Supreme Court imposed a burden on the State to request "that a limiting instruction be given both at the time the prosecutor introduces the [other bad act] evidence and in the final charge to the jury." 117 Nev. at 727, 30 P.3d at 1129. If the State fails to request the limiting instruction, the district court "should raise the issue" sua sponte, giving the defendant an opportunity to decide whether such an instruction is desirable. *Id.* at 731, 30 P.3d at 1132.

When the State introduces bad act evidence, the failure to give *Tavares* instructions is reviewed for harmless error, even if the defendant does not request one. *Id.* at 731-32, 30 P.3d at 1132 ("Because the defendant no longer has the burden of requesting a limiting instruction on the use of uncharged bad act evidence, we will no longer review cases involving the absence of the limiting instruction for plain error. Instead, we will review future cases for error under NRS 178.598."). The standard of review "is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Thus, unless [the court is] convinced that the accused suffered no prejudice . . . , the conviction must be reversed." *Id.* at 732, 30 P.3d at 1132 (footnote omitted) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

On the other hand, "a party will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit." *Pearson v. Pearson*, 110 Nev. 293, 297, 871 P.2d 343, 345 (1994) (quoting 5 Am. Jur. 2d *Appeal and Error* § 713 (1962)).

Thus, under the invited error doctrine, an appellant is not entitled to relief if they "induced or provoked" the error in the trial court. *Id.*

As noted above, Chadwick introduced the threat into evidence while cross-examining Henry and failed to object when the State asked Henry follow-up questions about both the threat and his gang affiliation on redirect. Additionally, Chadwick did not request *Tavares* instructions in connection with either the threat (which he first elicited) or the gang affiliation evidence (which the State first elicited).

Although the *Tavares* decision contains language suggesting that a defendant has no burden to request a limiting instruction, that case involved a situation where *the State* introduced the bad act into evidence, not the defendant. The reason the supreme court placed the burden on the State to request a limiting instruction had to do with the State's role in admitting the bad act evidence:

> Because the prosecutor is the one who must seek admission of uncharged bad act evidence and because the prosecutor must do so in his capacity as a servant to the law, we conclude that the prosecutor shall henceforth have the duty to request that the jury be instructed on the limited use of prior bad act evidence.

*Tavares*, 117 Nev. at 731, 30 P.3d at 1132.

By contrast, a defendant who introduces a bad act into evidence invites the error and is not automatically entitled to receive a *Tavares* instruction without request. *See LaChance v. State*, 130 Nev. 263, 276, 321 P.3d 919, 928 (2014); *Morton v. State*, No. 83884-COA, 2022 WL 4391751, at *4 (Nev. Ct. App. Sept. 22, 2022) (Order of Affirmance) (declining to reach the appellant's argument that the district court erred by failing to give a *Tavares* instruction where the defendant elicited the bad act evidence and failed to request a limiting instruction). Other jurisdictions with statutes

similar to NRS 48.045(2) have also determined that trial courts are not obligated to sua sponte provide limiting instructions when the defendant introduces bad act evidence. *See, e.g., State v. Benitez*, No. 96257, 2011 WL 5118418, at *7 (Ohio Ct. App. Oct. 27, 2011) (concluding that the trial court was not required to give a limiting instruction because the bad act evidence was initially raised by the defense on cross-examination); *State v. Elston*, No. 98,344, 2008 WL 4291518, at *1 (Kan. Ct. App. Sept. 19, 2008) ("The State did not present prior bad acts evidence requiring a limiting instruction; the defendant's presentation of such evidence and failure to request a limiting instruction constitutes invited error . . . .").

Therefore, we hold that a defendant bears the burden of requesting a limiting instruction when they directly elicit bad act evidence. In such circumstances, the general rule set forth in NRS 47.110 applies: "When evidence which is admissible . . . for one purpose but inadmissible . . . for another purpose is admitted, the judge, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." NRS 47.110 (emphasis added). Further, when a defendant introduces a bad act and fails to request a limiting instruction, the district court is not obligated to raise the issue or provide a *Tavares* instruction sua sponte. In this case, Chadwick directly elicited Henry's testimony about his threat, and therefore it was Chadwick's burden to request a *Tavares* limiting instruction, if he desired one, to reduce the risk of unfair prejudice in connection with the threat. *See* NRS 47.110. Because he did not request a limiting instruction in connection with the threat, Chadwick invited any alleged error regarding the absence of a *Tavares* instruction, and he is not entitled to relief.

Although Chadwick was not entitled to a *Tavares* instruction pertaining to the threat, he *was* entitled to a *Tavares* instruction to limit the jury's consideration of his gang affiliation, which the State elicited on redirect. Nevertheless, we conclude that the court's error in failing to give that instruction was harmless.

In *Tavares*, the supreme court determined that the absence of a limiting instruction was prejudicial and warranted reversal when the State introduced prior bad act evidence that the appellant had previously engaged in the *same behavior* underlying the charge for which he stood trial. 117 Nev. at 728-33, 30 P.3d at 1130-33. The appellant was charged with first-degree murder in the death of his three-month-old daughter. *Id.* at 728, 30 P.3d at 1130. The State's theory was that the appellant, who had a history of mishandling children, broke his daughter's ribs and asphyxiated her. *Id.* To prove its case, the State introduced evidence that the appellant had mishandled another child six years earlier and also squeezed his infant daughter and covered her mouth on prior occasions. *Id.* at 728-29, 30 P.3d at 1130. No limiting instruction was given regarding the use or purpose of this prior bad act testimony, which was admitted to establish Tavares's propensity to engage in similar conduct. *Id.* The supreme court noted that Tavares's conviction rested primarily on circumstantial evidence and prior bad acts, and the prior bad act evidence "impermissibly tainted the jury's verdict." *Id.* at 733, 30 P.3d at 1133.

In contrast, Chadwick's conviction in this case did not rest primarily on circumstantial evidence and prior bad acts. Chadwick did not dispute that he was in an accident or that he left the scene. Further, multiple witnesses, including Chadwick himself, testified to facts that would imply he knew or should have known he was in an accident. Henry

testified as a direct eyewitness to Chadwick's actions and stated that she told him that he had struck a child with his van but he continued to flee the scene. She also testified that Chadwick had consumed a substantial amount of alcohol, which provided a motive for him to flee and inferentially established his knowledge of the accident. In addition, Chadwick testified that he was driving through the intersection and heard a "thump" outside his van. While Chadwick testified that he believed he hit a pothole, Detective Almaguer testified that there were no potholes or irregularities in the road near the accident site. Several members of T.B.'s family also testified that Chadwick drove away quickly after the accident.

Further, Chadwick's gang affiliation was not offered to show that he "acted in conformity therewith" to prove guilt of the underlying charges, which was central to the supreme court's prejudice analysis in *Tavares*. NRS 48.045(2). Therefore, we conclude that any error in failing to provide a *Tavares* instruction to limit the jury's consideration of Chadwick's gang affiliation was harmless and did not have a "substantial and injurious effect" on the jury's verdict. *Kotteakos*, 328 U.S. at 776; *see also Tinch*, 113 Nev. at 1176, 946 P.2d at 1065.

## CONCLUSION

In summary, we conclude that the district court did not abuse its discretion in admitting evidence of Chadwick's alcohol consumption and apparent intoxication prior to the accident. This evidence was admissible to establish Chadwick's motive to flee and, inferentially, his knowledge that he had been in an accident when he fled the scene. We also hold that when a defendant directly elicits bad act evidence, it is the defendant's burden to request a *Tavares* limiting instruction in connection with that evidence. If the defendant fails to do so, the district court is not obligated to provide one

sua sponte. Because Chadwick has not established any basis to reverse his conviction, we affirm the judgment of conviction.[10]

_____, J.
Westbrook

We concur:

_____, C.J.
Gibbons

_____, J.
Bulla

---

[10]Chadwick also argues that (1) the district court plainly erred in admitting a 9-1-1 call; (2) the district court abused its discretion in sentencing; and (3) cumulative error warrants reversal. We have considered those arguments and conclude that they lack merit. Insofar as Chadwick has raised any other arguments that are not specifically addressed in this opinion, we have considered the same and similarly conclude that they do not present a basis for relief.